THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. _____

ADP, LLC,

      Plaintiff,

v.

DAVID SCHWARTZ,

      Defendant,

_____

### VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

      Plaintiff, ADP, LLC ("ADP"), for its Complaint for Injunctive and Other Relief against Defendant David Schwartz ("Defendant" or "Schwartz"), states as follows:

### INTRODUCTION

      1.    This action arises out of various breaches of contract, breach of duty of loyalty, and misappropriation of trade secrets.

### JURISDICTION AND PARTIES

      2.    Plaintiff, ADP, LLC, ("ADP") is a Delaware limited liability company with its principal place of business in Roseland, New Jersey.

      3.    Upon information and belief, Defendant Schwartz is an individual residing at 11636 Meadowrun Cir., Ft. Myers, Florida, 33913.

      4.    Venue is proper pursuant to Fla. Stat. § 47.011 because Schwartz resides in Ft. Myers, Florida.

{7742698: }

### EXHIBIT A

*ADP, LLC v. David Schwartz*
*Case No. _____*

## FACTUAL BACKGROUND AND COMMON ALLEGATIONS

5.     For over fifty years, ADP has provided business outsourcing and software services to clients, including human resources, payroll, tax, and benefits administration services. ADP offers its services internationally and across the United States, including in Florida.

6.     ADP has been able to achieve success in the industry by establishing a strong reputation for providing uncompromising, professional customer service to its client base and through the extensive and critical relationships that it has developed with its clients and marketing partners. ADP has expended substantial amounts of money, time, and resources over the years to select, hire, and train employees to build on and strengthen ADP's reputation and to develop and continue its relationships with its clients and its marketing partners.

7.     To promote valuable relationships between its employees and its clients and marketing partners, ADP has, among other things: recruited, hired and trained highly qualified sales employees and leadership; extensively marketed its services in the local community; provided competitive pricing in each market; established policies to provide quick and fair responses to any concerns made by clients; developed significant relationships with strategic marketing partners; and made customer service a primary goal and objective of its business.

8.     ADP's success in the industry is also largely attributable to its confidential, trade secret, and proprietary information regarding, among other things, its proprietary products, software, services, techniques, strategic business plans, client and prospect lists, client preferences, pricing and contract details, operational procedures, marketing and sales strategies, and referral sources.  ADP has invested significant time, money, and resources to generate,

{7742698: }

2

**EXHIBIT A**

*ADP, LLC v. David Schwartz*
*Case No. _____*

develop, and maintain its confidential, trade secret, and proprietary information (the "Proprietary Information").

### Schwartz's Employment with ADP

9.  In or about May 18, 2015, ADP hired Schwartz as an Assistant District Manager.

10.  In his position as Assistant District Manager, Schwartz was responsible for cultivating, developing, and maintaining business with clients and prospective clients.

11.  On April 30, 2015, as a condition of his employment, Schwartz entered into a Non-Disclosure Agreement ("NDA"). *See* Non-Disclosure Agreement, attached as **Exhibit A**. The NDA required that if Schwartz ceased to be an ADP employee he would "immediately return all documents and electronically stored information containing ADP Information (including all copies thereof), whether or not such materials were prepared by ADP, [Schwartz] or another Person, and which [were in his] possession or over which [he exercised] any control." *Id.* at 1(b).

12.  On April 30, 2015, as a condition of his employment, Schwartz also entered into a Sales Representative Agreement ("SRA"). *See* Sales Representative Agreement, attached as **Exhibit B**. The SRA contains certain reasonable restrictions designed to protect ADP's confidential business information and client goodwill, among other protectable business interests. Notably, the SRA provides the following:

> (b) . . . Upon termination of Employee's employment with the Company, Employee will return all copies of all materials which belong to the Company (whether or not such materials were prepared by the Company) and which are in Employee's possession or over which Employee exercises any control.

*See* **Exhibit B**, ¶ 4(b) (emphasis added).

## EXHIBIT A

*ADP, LLC v. David Schwartz*
Case No. _____

13.    On March 23, 2016, Schwartz became a District Manager in ADP's Small Business Services division.

14.    As a District Manager, Schwartz was responsible for managing a sales staff that was charged with cultivating, developing, and maintaining business with ADP's current and prospective clients.

15.    On July 20, 2017, Schwartz was promoted to Senior District Manager Elite Performer.   On June 6, 2018, Schwartz received a title change to Senior District Manager Elite Performer, Centric.   In his roles at ADP, Schwartz' territory included certain zip codes located in East Fort Myers, Lehigh Acres, Labelle, Clewiston, and Immokalee, Florida.   At ADP, Schwartz had access to the Proprietary Information.

16.    ADP offers participation in a stock award program to certain employees.   To receive the stock award, employees must agree to be bound by certain restrictive covenants.   *See* the 2017 Restrictive Covenant Agreement, attached as **Exhibit C**.   As part of the electronic acceptance process to receive the award of stock, an employee must accept the terms of these restrictive covenants.

17.    As a condition of receiving restricted stock, Schwartz entered into a Restrictive Covenant Agreement ("RCA") dated September 1, 2017.   *See id.*   Schwartz agreed to, among other things, certain non-solicit, non-interference, non-use, and non-disclosure obligations concerning ADP's confidential and proprietary business information, and the return of such information and ADP property upon Schwartz's separation from employment.   The non-disclosure and return of ADP property provision provides:

> **6. Non-Disclosure and Non-Use of Confidential Information and Trade Secrets.** During my employment, except as authorized and required to perform

{7742698: }

4

**EXHIBIT A**

*ADP, LLC v. David Schwartz*
Case No. _____

my duties for ADP, and after the voluntary or involuntary termination of my
employment for any reason and with or without cause, I will not access, disclose,
use, reproduce, distribute, or otherwise disseminate ADP's Confidential
Information or trade secrets or take any action causing, or fail to take any action
necessary in order to prevent, any such information to lose its character or cease
to qualify as Confidential Information or a trade secret. I agree to inquire with
ADP if I have any questions about whether I am authorized or required to access,
disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential
Information or whether particular information is Confidential Information or a
trade secret before accessing, using or disclosing such information. I understand,
however, that nothing in this Restrictive Covenant Agreement prohibits me from
reporting possible violations of federal law or regulation to any governmental
agency or entity or from communicating with any such agency or entity
regarding the same. I also agree to immediately return to ADP all property and
information belonging to ADP such as keys, credit cards, telephones, tools,
equipment, computers, passwords, access codes, pin numbers, and electronic
storage devices, as well as all originals, copies, or other physical embodiments
of ADP's Confidential Information or trade secrets (regardless of whether it is in
paper, electronic, or other form), including any such information in any
programs, business forms, manuals, correspondence, files, databases, or on
computer disks or any other storage medium, including but not limited to cloud
storage, whether or not owned or controlled by me or ADP (e.g., social and
business networking websites, web-based email servers, Notability, or cloud
storage services), immediately upon termination of my employment or upon any
earlier request by ADP, and I agree not to keep, access, disclose, use, reproduce,
distribute, or otherwise disseminate any copies, electronic or otherwise, of any of
the foregoing. I also understand that my obligations under this paragraph, as well
as the other covenants in this Agreement, extend to my activities on the internet,
including my use of business oriented social networking sites such as LinkedIn
and Facebook. This shall include deleting any business related connections or
contacts, including all ADP Clients and Business Partners, that I inputted in or
with whom I connected on any business oriented social networking sites, my
LinkedIn account, any cloud storage, any electronic device, or any cell phones
while employed at ADP.

*See* **Exhibit C**, ¶ 6.

18.    The RCA also contains a non-competition provision, which provides:

**3. Non-Competition.** I agree that during my employment and for a period of
twelve (12) months from the voluntary or involuntary termination of my
employment for any reason and with or without cause, I will not, directly or
indirectly, own, manage, operate, join, control, finance, be employed by or with,
or participate in any manner with a Competing Business anywhere in the

**EXHIBIT A**

*ADP, LLC v. David Schwartz*
Case No. _____

Territory where doing so will require me to (i) provide the same or substantially similar services to a Competing Business as those which I provided to ADP while employed, or (ii) use, disclose or disseminate ADP's Confidential Information or trade secrets. However, after my voluntary or involuntary termination of my employment for any reason and with or without cause, nothing shall prevent me from owning, as an inactive investor, securities of any competitor of ADP which is listed on a national securities exchange.

*See* **Exhibit C, ¶¶** 3.

19.    Schwartz was terminated from ADP effective July 18, 2018.

### Schwartz's Wrongful Conduct

20.    Schwartz has breached the NDA, SRA and RCA (collectively, "the Agreements"), as well as his duty of loyalty and other legal obligations to ADP.

21.    ADP has learned that while Schwartz was employed at ADP he created, though an intermediary company called National Telecom, a competing business called United Business Consulting Group Inc. ("UBCG"). Schwartz created UBCG on February 19, 2018, five months before his departure from ADP. *See* Sunbiz.org page for UBCG, attached as **Exhibit D.**

22.    Like ADP, UBCG offers human resources and payroll services. Specifically, UBCG contends that its HR solutions and payroll system is "the best in the industry." *See* UBCG Human Resources and Payroll Pages, attached as **Composite Exhibit E**.

23.    While employed at ADP, Schwartz was responsible for selling and managing a sales staff that was responsible for selling the same type of services that UBCG sells.

24.    Prior to his departure, Schwartz forwarded multiple emails from his ADP email account to his UBCG email account containing confidential ADP information, including information regarding ADP clients.

**EXHIBIT A**

*ADP, LLC v. David Schwartz*
Case No. _____

25.     Schwartz also failed to return his computer upon leaving ADP in violation of the Agreements. In fact, although ADP has demanded Schwartz return his ADP-owned computer, to date, he has still not done so.

26.     Based upon Schwartz's conduct in violation of the Agreements, ADP sent Schwartz a letter dated July 31, 2018, reminding Schwartz of his contractual obligations, outlining Schwartz's various violations of the Agreements and requesting that Schwartz execute an enclosed affidavit. *See* the "Cease and Desist Letter," attached as **Exhibit F**. ADP also informed Schwartz that if it did not receive the executed affidavit and confirmation that he returned all ADP documents and equipment in his possession, that ADP would be forced to take all action against him to protect ADP's contractual and other legal rights. *Id.*

27.     In response to the Cease and Desist Letter, Schwartz blamed the forwarded emails on his "technology not working" and claimed ADP should be held responsible for it. Notably, Schwartz did not deny having forwarded these emails and refused to sign an affidavit stating that he did not disclose any of the content of the emails to other individuals, that he deleted the emails, and that he did not retain any copies of the emails.

28.     ADP was, therefore, forced to file this lawsuit to protect its rights.

### Irreparable Harm to ADP

29.     Schwartz's conduct is unfairly harming ADP's business. The harm is irreparable.

30.     Schwartz has refused to return his ADP laptop containing confidential and Proprietary Information in violation of the Agreements.

**EXHIBIT A**

*ADP, LLC v. David Schwartz*
Case No. _____

31.     Schwartz also forwarded himself ADP emails containing confidential information to his email account at his competing business and has refused to delete the same and/or confirm that he has not shared this Proprietary Information with others.

32.     Schwartz continues to work at a direct competitor, UBCG that he created while working for ADP in violation of the Agreements and his duty of loyalty to ADP.

33.     As a direct result of Schwartz's actions, ADP has lost, and will continue to lose, the value of its Proprietary Information. Such information was developed and maintained at great expense and effort on the part of ADP and belongs to ADP. The ADP proprietary and trade secret information that Schwartz obtained and learned while employed at ADP has aided and will continue to aid Schwartz in his employment with UBCG, a direct competitor of ADP.

34.     Unless enjoined, Schwartz will continue to breach the Agreements, his loyalty and legal duties and obligations by working at UBCG, disclosing ADP's confidential and proprietary information, and misusing ADP's confidential and proprietary information to his and UBCG's advantage and to the competitive disadvantage of ADP.

35.     If Schwartz is not immediately barred from violating the Agreements and from using and disclosing ADP's confidential and Proprietary Information, ADP will continue to suffer irreparable harm. ADP lacks an adequate remedy at law to address the harm that it is suffering as a result of Schwartz's actions. Indeed, Schwartz agreed that any violation of the SRA and RCA would irreparably harm ADP and therefore would entitle ADP to injunctive relief to prevent further damage to ADP. *See* **Exhibit A**, ¶ 4(e); **Exhibits B**, ¶ 6; **Exhibits C**, ¶ 11.

36.     Due to Schwartz's divulgence and/or inevitable divulgence of Proprietary Information, as well as the loss of ADP's competitive edge, client goodwill and unfair

**EXHIBIT A**

competition, ADP is entitled to injunctive relief requiring the return of ADP's confidential materials, including but not limited to the laptop and forwarded emails, barring Schwartz from violating his nondisclosure and non-solicitation obligations and wrongfully using and disclosing ADP's confidential, proprietary, and trade secret information, as set forth more fully below. ADP is also entitled to damages, including lost profits, interest, costs, and attorneys' fees.

37.    By ignoring the clear and irrefutable restrictive covenants contained in the Agreements Schwartz executed and by ignoring ADP's Cease and Desist Letter, Schwartz's various and continuous breaches of the Agreements constitutes the type of willful, fraudulent, and malicious conduct that warrants punitive damages.

## Count I
## Injunctive Relief

38.    ADP hereby incorporates and re-alleges paragraphs 1-37 by reference.

39.    Plaintiff has a clear legal right or interest in protecting its trade secret, confidential and proprietary information and the business relationships with ADP's clients that form the subject matter of this suit.

40.    As a result of Defendant's failure to perform his duties and comply with his obligations under the NDA, SRA and RCA and misappropriation of trade secret, confidential and proprietary information, immediate and irreparable injury will result to Plaintiff if the Court does not enter an injunction prohibiting Defendant from, *inter alia*, misappropriating ADP's trade secret, confidential and proprietary information. This injury to Plaintiff outweighs any possible harm to Defendants.

41.    Plaintiff has an inadequate remedy at law.

42.    Plaintiff has a substantial likelihood of success on the merits of this cause.

**EXHIBIT A**

43. The entry of an injunction will not disserve the public interest.

WHEREFORE, Plaintiff demands that the Court enter a temporary and permanent injunction as follows:

      a. Enjoining Defendant from any further violations of the NDA, SRA and RCA;

      b. Enjoining Defendant from using or possessing ADP's trade secret, confidential and proprietary information;

      c. Enjoining Defendants from interfering with ADP's current and prospective clients; and,

      d. any additional relief this Court deems just, equitable and proper.

## Count II[1]
### Breach of Contract

44. ADP hereby incorporates and re-alleges paragraphs 1-43 by reference.

45. Schwartz voluntarily entered into the NDA, SRA and RCA with ADP.

46. The Agreements are each valid, binding, and enforceable contracts.

47. The Agreements are each supported by adequate, legal consideration.

48. ADP fully performed as required under the Agreements.

49. Schwartz breached, and will inevitably continue to breach, the Agreements by engaging in the conduct described herein, including failing to return ADP property and confidential information, wrongfully using and disclosing ADP's confidential, proprietary, and trade secret information, and wrongfully obtaining or retaining ADP's confidential, proprietary, and trade secret electronic documents.

50. As a result of Schwartz's breaches, ADP has suffered damages.

---

[1] Count II is being pled in the alternative to Count I.

{7742698: }

**EXHIBIT A**

*ADP, LLC v. David Schwartz*
Case No. _____

51.     As a result of Schwartz's breaches, ADP has suffered irreparable injury, and ADP imminently will continue to suffer irreparable injury for which there is no adequate remedy at law.

52.     ADP is entitled to damages, costs, and disbursements incurred in this action, including attorneys' fees, and to injunctive relief against further breaches of the Agreements.

WHEREFORE, Plaintiff seeks damages against Defendant, an award of its attorneys fees and costs as provided in the RCA, injunctive relief against further breaches of the Non-Disclosure Agreement, Sales Representative Agreement and Restrictive Covenant Agreement and any other relief the Court deems just and proper under the circumstances.

### Count III
### Specific Performance

53.     ADP hereby incorporates and re-alleges paragraphs 1-52 by reference.

54.     This in an action for specific performance of the NDA, SRA and RCA to require Schwartz to return ADP's company laptop and delete the forwarded emails in accordance with the Agreements.

55.     Schwartz entered into the Agreements pursuant to which Schwartz was to return all company materials upon his departure from ADP. The Agreements are clear, definite, certain and complete.

56.     Schwartz has breached the Agreements by failing and/or refusing to return the company laptop and by failing and/or refusing to delete the forwarded emails containing ADP proprietary information.

57.     ADP has abided by and performed its obligations under the Agreements.

58.     ADP has no adequate remedy at law.

**EXHIBIT A**
11

*ADP, LLC v. David Schwartz*
Case No. _____

WHEREFORE, Plaintiff seeks judgment that Defendant be required to return ADP's company laptop and delete all forwarded emails in conformity with the Agreements, and for any additional relief that the Court deems just and proper under the circumstances.

## Count IV
## Breach of Duty of Loyalty

59.     ADP hereby incorporates and re-alleges paragraphs 1-58 by reference.

60.     As an employee of ADP, Schwartz owed his employer an undivided duty of loyalty including, but not limited to, the duty to advance the interests of ADP, the duty to preserve ADP's Proprietary Information and the duty not to use any of ADP's Proprietary Information in any way adverse to ADP's interests.

61.     Following his separation, Schwartz continues to owe a duty of loyalty to ADP not to make use of its confidential and Proprietary Information.

62.     Schwartz breached his duty of loyalty to ADP by creating a competing business, UBCG and through his use and disclosure of ADP's Proprietary Information for his benefit and UBCG in contravention of the Agreements.

63.     Schwartz's breaches of the Agreements have wrongfully benefitted both Schwartz and UBCG, which, in turn, have caused ADP to suffer damages.

64.     As a result of Schwartz's breaches, ADP has suffered irreparable injury, and ADP will imminently suffer further irreparable injury for which there is no adequate remedy at law.

65.     ADP is entitled to damages, costs and injunctive relief against further breaches of the Agreements by Schwartz.

WHEREFORE, Plaintiff seeks damages against Defendant and any other relief the Court deems just and proper under the circumstances.

**EXHIBIT A**

*ADP, LLC v. David Schwartz*
Case No. _____

## Count V
## Misappropriation of Trade Secrets

66.    ADP hereby incorporates and re-alleges paragraphs 1-65 by reference.

67.    Schwartz acquired ADP's confidential and Proprietary Information by improper means.

68.    Schwartz has used and disclosed, or will inevitably use and/or disclose, ADP's confidential and Proprietary Information without authorization or consent from ADP.

69.    The confidential and Proprietary Information wrongfully disclosed, or that will inevitably be used and/or disclosed, by Schwartz constitutes trade secret information that is owned by ADP. Such information derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and also because ADP has undertaken reasonable efforts under the circumstances to ensure and maintain the secrecy of such information.

70.    As a result of Schwartz's use and disclosure, or inevitable use and/or disclose, of ADP's trade secret information, ADP has suffered damages.

71.    As a result of Schwartz's use and disclosure, or inevitable use and/or disclose, of ADP's trade secret information, ADP has suffered irreparable injury and there is immediate and imminent danger that ADP will continue to suffer irreparable injury for which there is no adequate remedy at law.

72.    ADP is entitled to injunctive relief against further use and disclosure, or inevitable use and/or disclose, of its trade secrets by Schwartz, damages, costs, and reasonable attorneys' fees.

**EXHIBIT A**

*ADP, LLC v. David Schwartz*
Case No. _____

WHEREFORE, Plaintiff seeks damages against Defendant, an award of its attorneys fees

and costs under Fla. Stat. § 501.2105, injunctive relief against further use and disclosure, or

inevitable use and/or disclosure, of its trade secrets by Schwartz and any other relief the Court

deems just and proper under the circumstances.

Respectfully submitted,

MCDONALD HOPKINS, LLC
Attorneys for Plaintiff
200 South Biscayne Blvd., Suite 2600
Miami, Florida 33131
Telephone: (305) 704-3990
Facsimile: (305) 704-3999
Primary e-mail: mruiz@mcdonaldhopkins.com
Primary e-mail: jdvir@mcdonaldhopkins.com

By: */s/ Mario M. Ruiz*
MARIO M. RUIZ
Florida Bar No. 894590
JOELLE H. DVIR
FLORIDA BAR NO. 105934

**EXHIBIT A**

## VERIFICATION

I, *James M. Gould, Assoc.* of ADP, LLC having been duly sworn and depose and state that I have read the foregoing Verified Complaint, and that the information stated therein is factually true, and that those matters stated upon information and belief are believed to be true.

_____
[NAME]

Sworn to and subscribed before me this ___2___ day of ~~October,~~ November 2018.

_____
Notary Public

NANCY A. PENNELLA
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES
MAY 30, 2022

**EXHIBIT A**

(7676619:7 )

eFiled
Lee
County
Clerk
of
Court
Page
15

# EXHIBIT A

**Automatic Data Processing, Inc.**
One ADP Boulevard
Roseland, New Jersey 07068

For good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, I agree with you that:

1. (a) During and at any time after my employment with Automatic Data Processing, Inc. and/or any of its divisions, subsidiaries and affiliates (collectively "ADP"), I shall not, except in connection with my duties as an ADP employee, on my behalf or on behalf of any other person, corporation, partnership or other entity whatsoever (each, a "Person"), access, use, or disclose to any Person any confidential information, trade secrets, or other proprietary information of ADP, its vendors, licensors, marketing partners, business partners, or clients (including, but not limited to, (i) ADP's business methods, procedures, pricing and marketing structure and strategy which are not publicly available and which I did not learn from a public source, (ii) ADP's source and object codes, computer screens, programs and forms, experimental or research work, methods, processes, formulas, or drawings, (iii) the names, addresses and business activities of ADP's current, former and prospective clients, and (iv) the names, addresses, and personal information of ADP's and ADP's current, former, and prospective clients' employees), learned by me at any time during my employment with ADP (collectively, the "ADP Information").

(b) Upon ceasing to be an ADP employee, I shall immediately return all documents and electronically stored information containing ADP Information (including all copies thereof), whether or not such materials were prepared by ADP, me or another Person, and which are in my possession or over which I exercise any control.

2. I understand and acknowledge that ADP shall have exclusive rights to anything related to ADP's actual or prospective business which I conceive or work on, either in whole or in part, while employed by ADP and that all such work product is hereby assigned to ADP and, if copyrightable, shall be property of ADP as "works for hire" under federal copyright law. I further understand and acknowledge that such work product may also constitute ADP confidential and proprietary information. Accordingly, I:

(a) shall promptly and fully disclose all such items to ADP and will not disclose such items to any other person or entity (other than employees of ADP authorized to review such information), without ADP's prior consent;

(b) shall maintain on ADP's behalf and surrender to ADP upon ceasing to be an ADP employee all written records regarding all such items;

(c) shall, but without personal expense, fully cooperate with ADP and execute all papers and perform all acts requested by ADP to establish, confirm or protect its exclusive rights in such items or to enable it to transfer legal title to such items, together with any patents, copyrights, trademarks, service marks and/or trade names that may be applied for and/or issued;

(d) shall, but without personal expense, provide such information and true testimony as ADP may request regarding such items including, without limitation, items which I neither conceived nor worked on but regarding which I have knowledge because of my employment by ADP;

(e) hereby assign to ADP, its successors and assigns, exclusive right, title and interest in and to all such items including, without limitation, any patents, copyrights, trademarks, service marks and/or trade names which have been, or may be, issued; and

(f) state that only such items in which I personally hold or claim an interest and which are not subject to this Agreement are listed on the Ownership Schedule attached hereto. The absence of an Ownership Schedule, or the absence of any disclosure on such Ownership Schedule, means that no such items exist.

3. (a) During the period that I am an ADP employee, I shall not (except in connection with my duties as an ADP employee), on my behalf or on behalf of any other Person, directly or indirectly, solicit, contact, call upon, communicate with or attempt to communicate with any Person that is a client, bona fide prospective client, marketing partner or business partner of ADP to sell, market, license, lease or provide any software, product or service competitive or potentially competitive with any software, product or service sold, marketed, licensed, leased, provided or under development by ADP at any time during my employment.

(b) During the period commencing on the date I cease to be an ADP employee for any reason whatsoever (such date, being the "Termination Date") and ending on the date that is twelve months thereafter, I shall not, on my behalf or on behalf of any other Person, directly or indirectly, solicit, contact, call upon, communicate with or attempt to communicate with any Person that was a client, bona fide prospective client, marketing partner or business partner of ADP before the Termination Date to sell, market, license, lease or provide any software, product or service competitive or potentially competitive with any software, product or service sold, marketed, licensed, leased, provided or under development by ADP during the two-year period prior to my Termination Date, provided that the restrictions set forth in this paragraph 3(b) shall only apply to clients, bona fide prospective clients, marketing partners or business partners of businesses of ADP with which I was involved.

(c) For purposes of this agreement, the term "client" and "prospective client" shall include, without limitation, any Person to or for whom ADP provides or proposes to provide, as applicable, products or services, either directly or indirectly, whether as a vendor, subcontractor to another vendor or otherwise, and whether or not privity of contract exists between ADP and such Person.

4. During the period commencing on the date I become an ADP employee and ending on the date that is twelve months following my Termination Date, I will not, directly or indirectly, hire, contract with, solicit, or encourage to leave ADP's employ any ADP employee, or hire or contract with any former ADP employee within one year of the date such person ceases to be an ADP employee.

**EXHIBIT A**

5. During my employment by ADP, I shall not accept any position (unless such position is to commence after my employment by ADP ceases), gratuities, compensation, reimbursement or funds, or their equivalent, from any Person engaged in any business in which ADP is engaged.

6. I acknowledge and agree that a violation of the foregoing covenants not to disclose, not to solicit and not to hire will cause irreparable injury to ADP. ADP shall be entitled, in addition to any other rights and remedies it may have at law or in equity, to an injunction enjoining and restraining me from performing, and continuing in the performance of, any such violation.

7. I understand and agree that I am employed on an at-will basis. As an at-will employee, I understand and agree that either ADP or I can terminate our employment relationship at any time for any reason, with or without advance notice and with or without cause. I understand and agree that, although over the course of my employment, other terms and conditions of my employment may change, the at-will term of my employment will not change. I understand that no one other than the Chief Executive Officer of ADP may enter into any agreement with me contrary to the foregoing and that any such contrary agreement must be in writing and signed by the Chief Executive Officer.

8. My obligations under this agreement shall be binding upon me regardless of which office(s) of ADP I am employed at or position(s) I hold and shall inure to the benefit of any successors or assigns of ADP. This agreement supplements and does not supersede any prior agreements(s) on the subject matter addressed herein.

9. If any provision of this agreement is invalid or unenforceable, the balance of this agreement shall remain in effect, and if any provision is inapplicable to any Person or circumstance it shall nevertheless remain applicable to all other Persons and circumstances. This agreement shall be governed by, and construed in accordance with, the laws of the State of New Jersey applicable to contacts made and to be performed entirely within such State. I acknowledge that the terms of this agreement are reasonable and that I have had a reasonable opportunity to consult with an attorney before agreeing to the terms of this agreement.

10. All notices shall be sent to the parties by certified or registered mail at the addresses set forth herein, Attention, in the case of ADP, Vice President, Human Resources, or to any changed address which may be given in writing hereafter. All notices to ADP shall also include a copy to ADP at One ADP Boulevard, Roseland, New Jersey 07068, Attention: General Counsel.

AUTOMATIC DATA PROCESSING, INC.

Michael A. Bonarti,
Vice President, General Counsel and Secretary

Name (Electronic Signature):    David Schwartz
Accept/Decline:                 Accept
Date:                           Apr 30, 2015 11:16 am

**EXHIBIT A**

eFiled Lee County Clerk of Courts Page 18

# EXHIBIT B

**EXHIBIT A**

eFiled Lee County Clerk of Courts Page 19

## SALES REPRESENTATIVE'S AGREEMENT

**AGREEMENT** between **Automatic Data Processing, Inc.**, a Delaware corporation, or one of its divisions, subsidiaries or affiliates (collectively, the "**Company**") with offices at One ADP Boulevard, Roseland, New Jersey 07068, and the employee agreeing to the terms hereof ("**Employee**").

In consideration of the covenants and agreements contained herein, the Company and Employee agree as follows:

1. **NATURE OF SERVICES**. The Company hereby employs Employee, and Employee accepts employment with the Company, as a Sales Representative. Employee shall devote Employee's best efforts and entire business time to the performance of Employee's duties and responsibilities hereunder. Employee agrees that Employee has read or will immediately read the Company's Code of Business Conduct and Ethics and the Employee will conduct himself or herself in accordance with that and all other Company policies throughout Employee's employment with the Company. Employee understands that the Company is committed to ethical behavior in business and Employee agrees that Employee will strictly adhere to the highest standards of ethics at all times when representing the Company.

2. **COMPENSATION**. Employee's compensation as a Sales Representative of the Company is as set forth in the Sales Compensation Plan which may be amended at any time at ADP's discretion.

3. **OTHER EMPLOYEE BENEFITS**. Employee shall be eligible to participate in any group health benefits, life insurance, stock purchase, vacation and other employee benefit plans in accordance with the terms and conditions of those plans.

4. **NON-SOLICITATION, NON-DISCLOSURE, NON-USE AND NON-HIRE**.

   (a) Employee agrees that during the period commencing the date Employee becomes an employee of the Company and ending one year after the date Employee ceases to be an employee of the Company for any reason whatsoever (the "Non-Solicitation Period"), Employee shall not, on Employee's behalf or on behalf of any other person, corporation, partnership or other entity whatsoever (a "Person"), directly or indirectly, solicit, contact, call upon, communicate with or attempt to communicate with any Person which was a client, bona fide prospective client or marketing partner of the Company before the date Employee ceases to be an Employee of the Company (the "Termination Date") that (i) was located in any territory Employee managed or to which Employee was assigned or covered during the two-year period prior to the Termination Date and/or (ii) Employee was assigned, managed and/or had knowledge of, contact or involvement with during the two-year period prior to the Termination Date, to sell, license or lease any software, product or service competitive or potentially competitive with any software, product or service sold, licensed, leased, provided or under development by the Company during the two-year period prior to the Termination Date, provided that the restrictions set forth in this paragraph shall only apply to clients, bona fide prospective clients or marketing partners of businesses of the Company with which the Employee was involved or exposed.

   (b) During and after Employee's employment with the Company, Employee will not disclose to any Person any business methods, procedures, pricing and marketing structure and strategy, programs, forms, confidential information, trade secrets, the names and addresses of current clients, former clients and prospective clients of the Company, or other data and information relating to the Company, its vendors, licensors, marketing partners or clients, learned by Employee at any time during Employee's employment with the Company (the "Information"). Upon termination of Employee's employment with the Company, Employee will return all copies of all materials which belong to the Company (whether or not such materials were prepared by the Company) and which are in Employee's possession or over which Employee exercises any control.

   (c) Employee will not, during the Non-Solicitation Period, except in the course of fulfillment of Employee's duties as an employee of the Company, use or act upon in any way, directly or indirectly, any information which became known to Employee during the course of Employee's employment with the Company concerning the identity or business activity of any current clients, former clients, prospective clients and/or marketing partners of the Company.

   (d) During the Non-Solicitation Period, Employee will not, directly or indirectly, hire, solicit, or encourage to leave the Company's employ any employee of the Company, or solicit, hire or contract with any former employee of the Company within one year after the date such person ceases to be an employee of the Company.

   (e) Employee agrees that a violation of the foregoing covenants not to solicit, not to disclose, not to use and not to hire or any provisions thereof will cause irreparable injury to the Company. Accordingly, the Company shall be entitled, in addition to any other rights and remedies it may have at law or in equity, to an injunction enjoining and restraining Employee from doing or continuing to do any such act.

   (f) For the purposes of this Agreement, the term "client" and "prospective client" shall include without limitation any entity to or for whom the Company provides or proposes to provide, as applicable, products or services either directly or indirectly, whether as a vendor, subcontractor to another vendor or otherwise, whether or not privity of contract exists between the Company and such entity.

5. **PATENTS AND OTHER DEVELOPMENTS**. Employee understands and acknowledges that the Company shall have exclusive rights to anything relating to its actual or prospective business which Employee conceives or works on while employed by the Company. Accordingly, Employee:

   (a) will promptly and fully disclose all such items to the Company and will not disclose such items to any other person or entity (other than employees of the Company authorized to review such items) without the Company's prior consent;

   (b) will maintain on the Company's behalf and surrender to the Company upon termination of the Employee's employment with the

EXHIBIT A

Company appropriate written records regarding all such items;

Case 2:18-cv-00803-JES-M_M Document 1-1 Filed 12/07/18 Page 21 of 57 PageID 26
(c) will, but without personal expense, fully cooperate with the Company, execute all papers and perform all acts requested by the

eFiled Lee County Clerk of Courts Page 20

Company to establish, confirm or protect its exclusive rights in such items or to enable it to transfer title to such items, together with any patents, copyrights, trademarks, service marks and/or trade names that may be applied for and/or issued;

(d) will, but without personal expense, provide such information and true testimony as the Company may request regarding such items, including, without limitation, items which Employee neither conceived nor worked on but regarding which employee has knowledge because of Employee's employment by the Company;

(e) hereby assigns to the Company, its successors and assigns, exclusive right, title and interest in and to all such items including, without limitation, any patents, copyrights, trademarks, service marks and/or trade names which have been, or may be, issued; and

(f) states that the only such items in which Employee personally holds or claims an interest, and which are not subject to this Agreement, are listed on the Ownership Schedule attached hereto. The absence of such an Ownership Schedule, or the absence of any disclosure on such Ownership Schedule, means that no such items exist.

## 6. AMENDMENTS: TERMINATION.

(a) The Company reserves the right to amend or modify this Agreement or the Sales Compensation Plan at any time after the date hereof.

(b) Notwithstanding the foregoing, Employee understands and agrees that Employee is employed by the Company on an at-will basis. As an at-will employee, Employee understands that either the Company or Employee can terminate the employment relationship at any time for any reason, with or without advance notice and with or without cause. Employee further understands that, although over the course of Employee's employment, other terms and conditions of Employee's employment may change, the at-will term of Employee's employment will not change. Employee understands that no one other than the Chief Executive Officer of the Company may enter into any agreement with Employee contrary to the foregoing and that any such contrary agreement must be in writing and signed by the Chief Executive Officer.

7. **GOVERNING LAW**. This Agreement shall be construed and interpreted in accordance with the laws of the State of New Jersey (where the Company's principal executive offices are located) applicable to contracts made and to be performed entirely within such State. The courts of New Jersey and the United States District Court for New Jersey shall have jurisdiction over the parties with respect to any dispute or controversy between them arising under or in connection with this Agreement. A summons or complaint in any such action or proceeding may be served by mail in accordance with Paragraph 8 below.

8. **NOTICES**. All notices shall be sent to the parties by certified or registered mail at the addresses set forth above or to any changed address which may be given in writing hereafter. All notices to the Company shall include a copy to the Company at One ADP Boulevard, Roseland, New Jersey 07068, Attention: General Counsel.

9. **SEPARABILITY**. If any provision of this Agreement (including, but not limited to, any provision set forth in Paragraphs 4 and 5 above), or any portion thereof, is held to be invalid or unenforceable, the balance of the Agreement shall remain in effect, and if any provision is inapplicable to any person or circumstance it shall nevertheless remain applicable to all other persons and circumstances.

10. **TRANSFER OF EMPLOYMENT**. The parties recognize that Employee may be employed in offices of the Company other than the one in which Employee is currently employed hereunder. Accordingly, the parties agree that whenever any event occurs affecting their respective rights, duties, or obligations hereunder, the member of the Company by which Employee is employed at the time such event occurs shall be deemed to be the "Company" for all purposes of this Agreement.

11. **HEADINGS**. The headings in this Agreement are solely for convenience of reference and shall not affect this Agreement's interpretation.

12. **ACKNOWLEDGMENTS**. Employee acknowledges that the Information is confidential and proprietary information belonging to the Company and that the use or disclosure of the Information except in connection with the Employee's employment with the Company could reduce that the Company's competitive advantage or otherwise commercially damage the Company. Employee further acknowledges that the terms of this Agreement are reasonable and that Employee has had a reasonable opportunity to consult with an attorney before signing this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have entered into this Agreement as of the date agreed to (whether electronically or otherwise) by Employee.

AUTOMATIC DATA PROCESSING, INC.

Michael A. Bonarti,
Vice President, General Counsel and Secretary

| Name (Electronic Signature): | David Schwartz |
| Accept/Decline: | Accept |
| Date: | Apr 30, 2015 11:17 am |

**EXHIBIT A**

eFiled Lee County Clerk of Courts Page 21

# EXHIBIT C

**EXHIBIT A**

eFiled Lee County Clerk of Courts Page 22

[Award Acceptance Document 2 of 2]



09/01/2017

## RESTRICTIVE COVENANT AGREEMENT

I am currently employed by Automatic Data Processing, Inc., or one of its subsidiaries or affiliated companies (collectively, "ADP") as a Sales Compensated Associate who enjoys substantial compensation and benefits from ADP, including participation in its 2008 Omnibus Award Plan, and as an ADP employee, I have had and will have access to Confidential Information, proprietary information, and trade secrets about the Business of ADP, ADP's operations, systems, techniques, software, and processes, its Clients, Business Partners, Vendors, and other unique trade and business methods, all of which are valuable assets of ADP that are developed at great effort and expense to ADP. I also have had or will have significant contact with ADP's current and prospective Clients, Business Partners, and/or Vendors in order to develop ADP's goodwill and client relations so that I can promote ADP's interests and objectives, and I understand that ADP has invested and will invest a significant amount of time and financial resources to develop my skills to assist me in performing my job duties for ADP. While these current and prospective Clients, Business Partners, and/or Vendors may be secured or serviced by ADP associates, including me, I acknowledge that such individuals or entities remain at all times those of ADP and that the goodwill engendered by the relationships is intended to inure only to the benefit of ADP; the goodwill is owned by ADP; and ADP shall be the sole beneficiary of such goodwill during and after the termination of my employment with ADP.

I understand that ADP is a profit-generating business operating in a highly competitive business environment and that it has a valid interest in protecting its valuable assets, including its Confidential Information, proprietary information and trade secrets, its goodwill and business relationships with its Clients, Business Partners, Vendors, and employees, and the specialized training of its employees, and I recognize that my use of ADP's valuable assets, directly or indirectly, against or in competition with ADP, during and after my employment, will result in irreparable harm to ADP. I understand that this Agreement is meant to limit reasonably and fairly my competition during my employment and following the end of my employment, and to define the corresponding obligations between me and ADP regarding: (1) unfair competition, (2) the solicitation of Clients, Business Partners or Vendors for or on behalf of ADP's competitors, (3) the solicitation of ADP's employees, and (4) the treatment of proprietary information, Confidential Information, and trade secrets.

**NOW, THEREFORE,** in consideration of my initial or continuing employment with ADP, ADP's disclosure to me of proprietary information, Confidential Information, and trade secrets to allow me to perform my duties for ADP, my participation in ADP's 2008 Omnibus Award Plan, the mutual benefits conferred herein, and for other good and valuable consideration (the receipt and sufficiency of all of which I hereby acknowledge), I agree as follows:

1.    **Definitions.**

    a.    **"Business of ADP"**    means the following businesses or services: (i) business outsourcing and human capital management solutions, including, without limitation, human resource, payroll, time, attendance and labor management, pre-employment, talent management, compliance and payment solutions, tax and benefits and retirement administration solutions and employment administration outsourcing solutions, which ADP provides globally; (ii) workers compensation and health insurance, which ADP provides in the United States and Canada through its licensed insurance agencies and consulting services relating to its business outsourcing and human capital management solutions; and (iii) data-driven business intelligence on issues in human capital management, employment, and workforce trends.

    b.    **"Business Partners"** means an individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees and agents, that is or has been in a commercial or business relationship with ADP (excluding Clients and Vendors), including **EXHIBIT A**

partners, and (iv) any other individual or entity whose products or services ADP purchases, acquires or licenses for use with, or redistribution to, a third party (including Clients).

      c.      **"Clients"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees or agents, or government or quasi-government entity, and their employees or agents, for: (i) whom ADP provides products or services in connection with the Business of ADP; (ii) whom ADP has provided products or services in connection with the Business of ADP within the one (1) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; (iii) whom I have solicited, contacted, called upon, communicated with, or attempted to communicate with on behalf of ADP in connection with the Business of ADP within the two (2) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (iv) about whom I have any Confidential Information or trade secret information.

      d.      **"Competing Business"** means any individual (including me), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is engaged in any business or enterprise that is the same as, or substantially the same as, that part of the Business of ADP in which I have worked or to which I have been exposed during my employment with ADP (regardless of whether I worked only for a particular segment of that part of the business in which I worked—for example, business segments based on the number of employees a Client has or a particular class of business using an ADP product or service).

      e.      **"Confidential Information"** means information and the compilation of information known or possessed by me because of my employment at ADP that is created, compiled, received or gathered by ADP or its agents and is related to the Business of ADP, that is valuable to ADP, and which ADP endeavors to protect from disclosure or use by its competitors and others who could benefit from its use, whether in written, tangible, electronic or any other form or media. Assuming the foregoing criteria are met, Confidential Information includes but is not limited to information about: ADP's operations, products, business plans, market strategies, and services; research and development of ADP products and services; ADP's intellectual property and trade secrets; Creative Works, including all publications, products, applications, processes, and software in any stage of development; names and other listings of current or prospective Clients, Business Partners, and Vendors (including contact information that may be compiled in computer databases that are not owned or controlled by ADP such as address books, personal digital assistants, smart phones, cloud storage services, and social and business websites); proposals made to current or prospective Clients, Business Partners, and Vendors or other information contained in offers or proposals to such Clients, Business Partners, and Vendors; the terms of any arrangements or agreements with Clients, Business Partners, and Vendors, including the amounts paid for such services or how pricing was developed by ADP, the implementation of Client-specific projects, the identity of Business Partners and Vendors, and Business Partner and Vendor pricing information, the composition or description of future services that are or may be provided by ADP; ADP's financial, marketing, and sales information; technical expertise and know-how developed by ADP, including the unique manner in which ADP conducts its business; employee lists, employee capabilities, employee compensation, prospective employee information, and employee training information and practices; Personally Identifiable Information; and Protected Health Information. Confidential Information also includes any information disclosed to ADP by a third party (including, without limitation, current or prospective Clients, Business Partners, and Vendors) that ADP is obliged to treat as confidential. This definition of Confidential Information excludes information that is or becomes known or generally available in the public domain through lawful means, other than through my act or failure to act. This definition of Confidential Information and the use of the term Confidential Information in this Agreement are not meant to limit ADP's rights under applicable trade secrets laws, and ADP specifically reserves all of its rights under all applicable laws concerning trade secrets.

      f.      **"Creative Works"** means any and all works of authorship including, for example, written documents, spreadsheets, graphics, designs, trademarks, service marks, algorithms, computer programs or code, protocols, formulas, mask works, brochures, presentations, photographs, music or compositions, manuals, reports, and compilations of various elements, whether or not patentable or registrable under copyright, trademark, or similar domestic and foreign laws.

**EXHIBIT A**

      g.      **"Material Business Contact"** means contact that is intended to establish or strengthen a

eFiled Lee County Clerk of Courts Page 24

    **h.**      **"Personally Identifiable Information" ("PII")** is Confidential Information and includes an individual's first name and last name or first initial and last name in combination with any of the following: an individual's social security number, tax identification number, social insurance number, driver's license number, government-issued identification card number, financial or bank account information, healthcare information, or credit, debit or payroll card number.

    **i.**      **"Protected Health Information" ("PHI")** is Confidential Information and includes information that is created, received, and/or maintained by the Company related to an individual's health care (or payment related to health care) that directly or indirectly identifies the individual.

    **j.**      **"Territory"** means the geographic area where I worked, represented ADP, or had Material Business Contact with ADP's Clients in the two (2) year period preceding the termination of my employment with ADP.

    **k.**      **"Vendors"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, or government entity that supplies materials or services to ADP for internal use.

**2.**    **Duties and Best Efforts.** I agree to provide to ADP and its Clients services related to the Business of ADP, as directed by ADP in its sole discretion. During employment, I agree to devote my full time and best efforts to ADP, not to provide to ADP's Clients or ADP's competitors the same or similar services or products as those provided to ADP other than on behalf of ADP, and not to engage in any other employment, consultant, or advisory relationship that is the same as, similar to, or related to my duties with ADP or the Business of ADP or that otherwise creates a conflict of interest with ADP. I also agree that I am prohibited from accessing any of ADP's Confidential Information, computer systems, servers, drives, or databases for any competitive or conflicting purpose and that any authorization for such access is revoked and prohibited by ADP once I engage in any competitive or conflicting activities or take any material steps towards accomplishing any competitive or conflicting activities. I further agree to not make any false or misleading statements regarding ADP or its products or services, and agree to not make any false or misleading statements or take action to mislead ADP regarding clients, prospective clients, business partners, or vendors, including falsifying documents.

**3.**    **Non-Competition.** I agree that during my employment and for a period of twelve (12) months from the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, own, manage, operate, join, control, finance, be employed by or with, or participate in any manner with a Competing Business anywhere in the Territory where doing so will require me to (i) provide the same or substantially similar services to a Competing Business as those which I provided to ADP while employed, or (ii) use, disclose or disseminate ADP's Confidential Information or trade secrets. However, after my voluntary or involuntary termination of my employment for any reason and with or without cause, nothing shall prevent me from owning, as an inactive investor, securities of any competitor of ADP which is listed on a national securities exchange.

**4.**    **Non-Solicitation of and Non-Interference with Clients, Business Partners, and Vendors.**

    **a.**      **Clients:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly, solicit, divert, appropriate, or accept any business from, or attempt to solicit, divert, appropriate, or accept any business from any Client for the purposes of providing products or services within the United States of America that are the same as or substantially similar to those provided in the Business of ADP. I also agree that I will not induce or encourage or attempt to induce or encourage any Clients to cease doing business with ADP or materially alter their business relationship with ADP.

    **b.**      **Business Partners:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly engage, contract with, solicit, divert, appropriate or accept any business from, or attempt to engage, contract with, solicit, divert, appropriate or accept any business from any Business Partner for the purpose of providing to me or any Competing Business any product or service within the United States of America that is (a) the same as

**EXHIBIT A**

{6883400:}

eFiled Lee County Clerk of Courts Page 25

provision applies only to a Business Partner: (i) with whom ADP currently has a commercial or business relationship in connection with the Business of ADP; (ii) with whom ADP has had a commercial or business relationship in connection with the Business of ADP within the one (1) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (iii) about whom I have any Confidential Information or trade secret information.   I also agree that I will not induce or encourage or attempt to induce or encourage any Business Partner to cease doing business with ADP or materially alter their business relationship with ADP.

     **c.**     **Vendors:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not induce or encourage or attempt to induce or encourage any Vendor to cease doing business with ADP within the United States of America or materially alter their business relationship with ADP within the United States of America.

**5.**     **Non-Solicitation of Employees.** I agree that during my employment with ADP and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, hire, solicit, recruit, or encourage to leave ADP, any current employees of ADP or hire, solicit, recruit, or contract with employees who terminate their employment with ADP within twelve (12) months following my termination date. This restriction shall only apply to ADP employees located within the United States of America.

**6.**     **Non-Disclosure and Non-Use of Confidential Information and Trade Secrets.** During my employment, except as authorized and required to perform my duties for ADP, and after the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or trade secrets or take any action causing, or fail to take any action necessary in order to prevent, any such information to lose its character or cease to qualify as Confidential Information or a trade secret. I agree to inquire with ADP if I have any questions about whether I am authorized or required to access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or whether particular information is Confidential Information or a trade secret before accessing, using or disclosing such information. I understand, however, that nothing in this Restrictive Covenant Agreement prohibits me from reporting possible violations of federal law or regulation to any governmental agency or entity or from communicating with any such agency or entity regarding the same. I also agree to immediately return to ADP all property and information belonging to ADP such as keys, credit cards, telephones, tools, equipment, computers, passwords, access codes, pin numbers, and electronic storage devices, as well as all originals, copies, or other physical embodiments of ADP's Confidential Information or trade secrets (regardless of whether it is in paper, electronic, or other form), including any such information in any programs, business forms, manuals, correspondence, files, databases, or on computer disks or any other storage medium, including but not limited to cloud storage, whether or not owned or controlled by me or ADP (e.g., social and business networking websites, web-based email servers, Notability, or cloud storage services), immediately upon termination of my employment or upon any earlier request by ADP, and I agree not to keep, access, disclose, use, reproduce, distribute, or otherwise disseminate any copies, electronic or otherwise, of any of the foregoing. I also understand that my obligations under this paragraph, as well as the other covenants in this Agreement, extend to my activities on the internet, including my use of business oriented social networking sites such as LinkedIn and Facebook. This shall include deleting any business related connections or contacts, including all ADP Clients and Business Partners, that I inputted in or with whom I connected on any business oriented social networking sites, my LinkedIn account, any cloud storage, any electronic device, or any cell phones while employed at ADP. Pursuant to 18 U.S.C. § 1833(b), and as set forth fully therein, notice is hereby given that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to court order. **EXHIBIT A**

**7.**     **Prior Agreements and Disclosure of Agreement to Third Parties.** I represent that I am not a party

7.     **Prior Agreements and Disclosure of Agreement to Third Parties.** I represent that I am not a party to any agreement with any former employer or any other person or entity containing any non-disclosure, non-compete, non-solicitation, non-recruitment, intellectual property assignment, or other covenant that will affect

4

{6883400;}

eFiled Lee County Clerk of Courts Page 26

my ability to devote my full time and attention to the Business of ADP that has not already been disclosed to ADP in writing. I also agree to provide a copy of this Agreement to any subsequent employer, person, or entity to which I intend to provide services that may conflict with any of my obligations in this Agreement prior to engaging in any such activities and to provide ADP in writing the name and address of any such employer, person, or entity and a description of the services I intend to provide prior to engaging in any such activities. I agree that ADP may also provide a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party at any time as it deems necessary to protect its interests, and I agree to indemnify ADP against any claims and hold ADP harmless from any losses, costs, attorneys' fees, expenses, fees, and damages arising out of my failure to comply with this paragraph or ADP's providing a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party.

8.     **Severability and Reformation.** I agree if any particular paragraph, subparagraph, phrase, word, or other portion of this Agreement is determined by an appropriate court to be invalid or unenforceable as written, it shall be modified as necessary to be made valid or enforceable, and such modification shall not affect the remaining provisions of this Agreement, or if it cannot be modified to be made valid or enforceable, then it shall be severed from this Agreement, and all remaining terms and provisions shall remain enforceable.

9.     **Choice of Law, Venue, and Jurisdiction.** The interpretation, validity, and enforcement of this Agreement will be governed by the laws of the State of New Jersey, without regard to any conflicts of law principles that require the application of the law of another jurisdiction. I agree that any action by me to challenge the enforceability of this Agreement must be brought or litigated exclusively in the appropriate state or federal court located in the State of New Jersey. I also agree that any action by ADP to enforce this Agreement, as well as any related disputes or litigation related to this Agreement, may, but do not have to, be brought in the appropriate state or federal court located in the State of New Jersey. I agree and consent to the personal jurisdiction and venue of the federal or state courts of New Jersey for resolution of any disputes or litigation arising under or in connection with this Agreement or any challenge to this Agreement and waive any objections or defenses to personal jurisdiction or venue in any such proceeding before any such court.

10.    **Survival.** I acknowledge that my employment relationship with ADP is "terminable at will" by either party and that ADP or I can terminate the relationship with or without cause and without following any specific procedures. Nothing contained in this Agreement is intended to or shall be relied upon to alter the "terminable at will" relationship between the parties. However, all non-competition, non-solicitation, non-disclosure and non-use, non-recruiting, intellectual property, and Agreement disclosure obligations under paragraphs three (3) through seven (7) of this Agreement shall survive the voluntary or involuntary termination of my employment for any reason and with or without cause, and no dispute regarding any other provisions of this Agreement or regarding my employment or the termination of my employment shall prevent the operation and enforcement of these obligations.

11.    **Relief, Remedies, and Enforcement.** I acknowledge that ADP is engaged in a highly competitive business, and the covenants and restrictions contained in this Agreement, including the geographic and temporal restrictions, are reasonably designed to protect ADP's legitimate business interests, including ADP goodwill and client relations, Confidential Information and trade secrets, and the specialized skills and knowledge gained by me and ADP's other employees during our employment. I acknowledge and agree that a breach of any provision of this Agreement by me will cause serious and irreparable damage to ADP that will be difficult to quantify and for which a remedy at law for monetary damages alone may not be adequate. Accordingly, I agree that if ADP should bring an action to enforce its rights under this Agreement and ADP establishes that I have breached or threatened to breach any of my obligations under this Agreement, ADP shall be entitled, in addition to all remedies otherwise available in law or in equity, to a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining such breach or threatened breach in any court of competent jurisdiction without the necessity of posting a surety bond, as well as an equitable accounting of all profits or benefits arising out of any violation of this Agreement. I also agree that nothing in this Agreement shall be construed to prohibit ADP from pursuing any and all other legal or equitable remedies available to it for breach of any of the provisions of this Agreement, including the disgorgement of any profits, bonuses, commissions, or fees realized by me, any subsequent employers, any business owned or operated by me or to which I provide services, or any of my agents or any assigns. I also agree that that the knowledge, skills, and abilities I possess at the time of commencement of my employment are sufficient to permit me to earn a livelihood satisfactory to me without violating any provision of paragraphs three (3) through seven (7) above,

**EXHIBIT A**

for example, by using such knowledge, skills, and abilities, or some of them, in the service of business that is not competition with ADP. I further agree to pay any and all legal fees including without limitation all

5

{6883400:}

eFiled Lee County Clerk of Courts Page 27

attorneys' fees, court costs, and any other related fees and/or costs incurred by ADP in enforcing this Agreement.

**12.    Tolling.** The restricted time periods in paragraphs three (3) through six (6) above shall be tolled during any time period that I am in violation of such covenants, as determined by a court of competent jurisdiction, so that ADP may realize the full benefit of its bargain. This tolling shall include any time period during which litigation is pending, but during which I have continued to violate such protective covenants and a court has declined to enjoin such conduct or I have failed to comply with any such injunction.

**13.    Cooperation.** During my employment, I shall cooperate with ADP in any internal investigation or administrative, regulatory or judicial proceeding as reasonably requested by ADP (including, without limitation, being available to ADP upon reasonable notice for interviews and factual investigations, appearing at ADP's request to give testimony without requiring service of a subpoena or other legal process, volunteering to provide ADP all pertinent information and turning over to ADP all relevant documents which are or may come into my possession, all at times and on schedules that are reasonably consistent with my other permitted activities and commitments). In the event ADP requires my cooperation in accordance with this Section, ADP shall reimburse me solely for reasonable travel expenses (including lodging and meals, upon submission of receipts).

**14.    Entire Agreement and Validity of Terms.** I agree that I do not rely, and have not relied, upon any representation or statement not set forth herein by ADP or any of ADP's agents, representatives, or attorneys, and that this Agreement may be changed only by a subsequent agreement in writing signed by both parties. I understand that I may have an existing agreement(s) with ADP, through acquisition of a prior employer or otherwise, that may include the same or similar covenants as those in this Agreement, and acknowledge that this Agreement is meant to supplement any such agreement(s) such that the covenants in the agreements that provide ADP with the greatest protection enforceable under applicable law shall control, and that the parties do not intend to create any ambiguity or conflict through the execution of this Agreement that would release me from the obligations I have assumed under the protective covenants in any of these agreements.

**15.    Electronic Signature.** I agree that ADP may enforce this Agreement with a copy for which I have provided an electronic signature.

**16.    Assignment and Successorship.** This Agreement and ADP's rights and obligations hereunder may be assigned by ADP and shall inure to the benefit of and shall be enforceable by any such assignee, as well as any of ADP's successors in interest. This Agreement and my rights and obligations may not be assigned by me, but are binding upon my heirs, administrators, executors, and personal representatives.

**17.    Waiver.** ADP's waiver of a breach of any provision of this Agreement in any particular instance shall not be deemed to be a waiver of any other breach in any other instance and/or of ADP's other rights at law, in equity, or under this Agreement. ADP's failure to take action against any other employee for similar breaches shall not operate as a wavier by ADP of a breach as to me. Any waiver by ADP of any breach of this Agreement by me shall not be effective unless in writing signed by the President of ADP, and no such waiver with regards to me or any other person under a similar agreement shall operate or be construed as a waiver of the same type of breach or any other breach on a subsequent occasion by me or any other person or entity.

**18.    Jury Trial Waiver.** I agree that, to the fullest extent permitted by law, each party waives any right to trial by jury with respect to any proceeding arising out of or relating to this Agreement.

**19.    Opportunity to Review.** I agree that I have read this Agreement before signing it, understand its terms, and that I have had the opportunity to have legal counsel review this Agreement, prior to signing it, and I acknowledge that I have not been forced or coerced in any manner to sign this Agreement and do so of my own free will.

After reviewing this document, close **EXHIBIT A** continue the grant acceptance process.

6

{6883400:}

eFiled Lee County Clerk of Courts Page 28

**HRU6AZL8**

**10/02/2017 10:59 AM U.S. Eastern Standard Time**

**ACCEPTED**

**EXHIBIT A**

7

{6883400:}

eFiled Lee County Clerk of Courts Page 29

# EXHIBIT D

**EXHIBIT A**

eFiled Lee County Clerk of Courts Page 30

Detail by Entity Name                                                Page 1 of 3

Florida Department of State                                          DIVISION OF CORPORATIONS



Department of State  /  Division of Corporations  /  Search Records  /  Detail By Document Number  /

**EXHIBIT A**

## Detail by Entity Name

Florida Profit Corporation
UNITED BUSINESS CONSULTING GROUP INC

Filing Information

| | |
|---|---|
| **Document Number** | P18000016705 |
| **FEI/EIN Number** | NONE |
| **Date Filed** | 02/19/2018 |
| **Effective Date** | 02/15/2018 |
| **State** | FL |
| **Status** | ACTIVE |

Principal Address

1910 PARK MEADOWS DR
104
FORT MYERS, FL 33907

Mailing Address

1910 PARK MEADOWS DR
104
FORT MYERS, FL 33907

Registered Agent Name & Address

DE LA ROSA, MARIA
870 W HIKPOCHEE AVE
1700
LABELLE, FL 33935

Officer/Director Detail

Name & Address

Title P

NATIONAL TELECOM PROVIDRS INC
11636 MEADOWRUN CIRCLE
FORT MYERS, FL 33913 UN

Title VP

DE LA ROSA, MARIA
870 W HIKPOCHEE AVE
LABELLE, FL 33935

Annual Reports

**No Annual Reports Filed**

Document Images

02/19/2018 — Domestic Profit | View image in PDF format | **EXHIBIT A**



Florida Department of State, Division of Corporations

Detail by Entity Name                                                      Page 3 of 3

**EXHIBIT A**

# EXHIBIT E

eFiled Lee County Clerk of Courts Page 34

Payroll – UCBG| United Business Consultants Group                    Page 1 of 2

 (http //ubcgroup biz/)     Q    ☰

# PAYROLL

Do you currently have a system for your payroll or are you using the old-school method? You wouldn't believe how much time a Payroll system can save you! Time is money, right? Work with us to get you the best Payroll system in the industry!

Our experts, will listen to your Payroll needs and give you the best options possible.

I WANT TO DISCUSS MY NEEDS (http://ubcgroup.biz/contact/)

I WANT TO EXPLORE OTHER SERVICES (http //ubcgroup biz/services/)

**EXHIBIT A**

http://ubcgroup.biz/services/payroll/ eFiled Lee County Clerk of Courts Page 35          11/6/2018
Payroll – UCBG| United Business Consultants Group                                        Page 2 of 2

© 2018 UBCG| UNITED BUSINESS CONSULTANT GROUP

Digital Link Marketing (http //digitallink design)

**EXHIBIT A**

http://ubcgroup.biz/services/ eFiled Lee County Clerk of Courts Page 36          11/6/2018
Human Resources – UCBG| United Business Consultants Group                        Page 1 of 2

 (http //ubcgroup biz/)                                Q    ≡

# HUMAN RESOURCES

At UBCG, we have HR Solutions that are the best in the industry.
We can consult you based on your customized needs.
Regardless of how many employees you have or the scale of
your business, we can match you with the perfect solution.

Our experts, will listen to your Human Resource needs and give
you the best options possible.

I WANT TO DISCUSS MY NEEDS (http://ubcgroup.biz/contact/)

I WANT TO EXPLORE OTHER SERVICES (http //ubcgroup biz/services/)

**EXHIBIT A**

Human Resources – UCBG| United Business Consultants Group    Page 2 of 2

© 2018 UBCG| UNITED BUSINESS CONSULTANT GROUP

Digital Link Marketing (http //digitallink design)

**EXHIBIT A**

# EXHIBIT F

# McDonald Hopkins

A business advisory and advocacy law firm®

**Timothy J. Lowe**
Direct Dial: 248.220.1359
E-mail: tlowe@mcdonaldhopkins.com

McDonald Hopkins PLC
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304

P 1.248.646.5070
F 1.248.646.5075

July 31, 2018

**Via First Class Mail, Federal Express Delivery**
**With and Without Signature Required, and**
**E-Mail (dschwartz456@yahoo.com)**

David Schwartz
11636 Meadowrun Cir
Ft. Myers, FL 33913

      Re:    ADP, LLC

Dear Mr. Schwartz:

This law firm represents Automatic Data Processing ("ADP"). I am writing to remind you of your continuing legal obligations to ADP. Among these continuing obligations are requirements that you do not compete with ADP in the same territory, that you do not solicit ADP's Clients, or use or disclose ADP's Confidential Information.

Your obligations between yourself and ADP are contained in a number of Agreements, including the Non-Disclosure Agreement dated April 30, 2015 (the "NDA"), the Sales Representative Agreement dated April 30, 2015 (the "SRA"), and the Restrictive Covenant Agreement ("RCA") dated September 1, 2017. Copies of these agreements, which you should read, are enclosed for your reference.

ADP is particularly concerned with its discovery that you created a competing business while you were employed by ADP and then forwarded multiple emails from your ADP email account to your email account at United Business Consulting Group, including information regarding ADP clients. You must immediately delete this information. You were also provided a box to return any other ADP materials to ADP, including your laptop, but to date ADP has not received that box. Please return it immediately.

In the RCA, you agreed, among other things, to various obligations both during and after your employment with ADP. Specifically, you agreed to the following:

**3. Non-Competition.** I agree that during my employment and for a period of twelve (12) months from the voluntary or involuntary termination of my

**EXHIBIT A**

employment for any reason and with or without cause, I will not, directly or indirectly, own, manage, operate, control, finance, or be employed by, work for,
or participate in any manner with a Competing Business anywhere in the Territory

Chicago | Cleveland | Columbus | Detroit | Miami | West Palm Beach

**www.mcdonaldhopkins.com**

David Schwartz
Page 2
July 31, 2018

where doing so will require me to (i) provide the same or substantially similar services to a Competing Business as those which I provided to ADP while employed, or (ii) use, disclose or disseminate ADP's Confidential Information or trade secrets. However, after my voluntary or involuntary termination of my employment for any reason and with or without cause, nothing shall prevent me from owning, as an inactive investor, securities of any competitor of ADP which is listed on a national securities exchange.

**4. Non-Solicitation of and Non-Interference with Clients, Business Partners, and Vendors.**

**a. Clients:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly, solicit, divert, appropriate, or accept any business from, or attempt to solicit, divert, appropriate, or accept any business from any Client for the purposes of providing products or services within the United States of America that are the same as or substantially similar to those provided in the Business of ADP. I also agree that I will not induce or encourage or attempt to induce or encourage any Clients to cease doing business with ADP or materially alter their business relationship with ADP.

\* \* \*

**5. Non-Solicitation of Employees.** I agree that during my employment with ADP and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, hire, solicit, recruit, or encourage to leave ADP, any current employees of ADP or hire, solicit, recruit, or contract with employees who terminate their employment with ADP within twelve (12) months following my termination date. This restriction shall only apply to ADP employees located within the United States of America.

**6. Non-Disclosure and Non-Use of Confidential Information and Trade Secrets.** During my employment, except as authorized and required to perform my duties for ADP, and after the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or trade secrets or take any action causing, or fail to take any action necessary in order to prevent, any such information to lose its character or cease to qualify as Confidential Information or a trade secret. I agree to inquire with

**EXHIBIT A**

ADP if I have any questions about whether I am authorized or required to access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or whether particular information is Confidential Information or a

{7547615: }



David Schwartz
Page 3
July 31, 2018

trade secret before accessing, using or disclosing such information. I understand, however, that nothing in this Restrictive Covenant Agreement prohibits me from reporting possible violations of federal law or regulation to any governmental agency or entity or from communicating with any such agency or entity regarding the same. I also agree to immediately return to ADP all property and information belonging to ADP such as keys, credit cards, telephones, tools, equipment, computers, passwords, access codes, pin numbers, and electronic storage devices, as well as all originals, copies, or other physical embodiments of ADP's Confidential Information or trade secrets (regardless of whether it is in paper, electronic, or other form), including any such information in any programs, business forms, manuals, correspondence, files, databases, or on computer disks or any other storage medium, including but not limited to cloud storage, whether or not owned or controlled by me or ADP (e.g., social and business networking websites, web-based email servers, Notability, or cloud storage services), immediately upon termination of my employment or upon any earlier request by ADP, and I agree not to keep, access, disclose, use, reproduce, distribute, or otherwise disseminate any copies, electronic or otherwise, of any of the foregoing. I also understand that my obligations under this paragraph, as well as the other covenants in this Agreement, extend to my activities on the internet, including my use of business oriented social networking sites such as LinkedIn and Facebook. This shall include deleting any business related connections or contacts, including all ADP Clients and Business Partners, that I inputted in or with whom I connected on any business oriented social networking sites, my LinkedIn account, any cloud storage, any electronic device, or any cell phones while employed at ADP. Pursuant to 18 U.S.C. § 1833(b), and as set forth fully therein, notice is hereby given that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to court order.

\*\*\*

**EXHIBIT A**

15.    **Electronic Signature.** I agree that ADP may enforce this Agreement with a copy for which I have provided an electronic signature.

Additionally, paragraph 7 of the RCA requires you to provide a copy of the RCA to any subsequent employer. That paragraph provides, in pertinent part:

{7547615: }



eFiled Lee County Clerk of Courts Page 42

David Schwartz
Page 4
July 31, 2018

> . . . I also agree to provide a copy of this Agreement to any subsequent employer, person, or entity to which I intend to provide services that may conflict with any of my obligations in this Agreement prior to engaging in any such activities and to provide ADP in writing the name and address of any such employer, person, or entity and a description of the services I intend to provide prior to engaging in any such activities. . . .

This letter is to put you on notice that you must immediately cease and desist from any activities that are violating, or that could potentially violate, your obligations as set forth in the RCA. Such improper activities include working for any ADP competitor in your former Territory, as well as soliciting ADP clients, prospective clients, business partners or referral sources, or disclosing or using ADP Confidential Information.

Enclosed is an affidavit in which you are requested to confirm your understanding of your obligations to ADP and confirm that you have deleted and not improperly used or disclosed to anyone ADP information. **Please provide to me, on or before August 7, 2018, a signed and notarized copy of the enclosed Affidavit and confirmation that you have returned all ADP documents and equipment in your possession.** If I do not receive this written confirmation from you, we will take all action against you to protect ADP's contractual and other legal rights. Moreover, should ADP be required to file a lawsuit, you will be responsible for all of ADP's costs and attorney fees, as you specifically agreed in the Agreement, as well as all of the injunctive and monetary relief to which ADP is entitled.

In addition, given the potential dispute between you and ADP, and the possibility of litigation commencing as the result of your improper conduct, you are hereby put on notice that you must preserve all potential evidence related to the above claims. Specifically, you must not destroy, delete, modify, or discard any documents, email messages, files or information, in electronic, paper or any form or media, related to this dispute. Such documents include, but are not limited to, documents related to your former employment with ADP, the business and/or operations of ADP, the matters set forth in the enclosed Agreement, and any documents related to your employment, or application for employment, with any new employer. In addition, you are instructed not to reformat your home or work computers or change or delete any information contained therein. If you choose to do otherwise, ADP will treat this matter with the utmost seriousness and will seek any and all available sanctions against you.

Thank you for your immediate attention to this matter.

Ve**EXHIBIT A**ura

Timothy J. Lowe

{7547615: }



STATE OF FLORIDA      )
                      ) ss
COUNTY OF _____  )

## **AFFIDAVIT OF DAVID SCHWARTZ**

I, David Schwartz, being first duly sworn according to law, depose and state as follows:

1.      I was employed by ADP, LLC ("ADP") from approximately May 18, 2015 through July 18, 2018  Most recently, I worked in the position of District Manager in ADP's Small Business Services division in Fort Myers, Florida.

2.      In connection with my employment by ADP, I executed the Sales Representative Agreement dated April 30, 2015 (the "SRA"), the Non-Disclosure Agreement dated April 30, 2015 (the "NDA"), and the Restrictive Covenant Agreement dated September 1, 2017 (the "RCA") (together, the "Agreements").

3.      I admit that I forwarded multiple emails from my ADP email account to my email account at United Business Consulting Group ("UBCG") containing confidential ADP information. The only email account to which I forwarded ADP emails was this UBCG account.

4.      I have not forwarded any of the emails I sent from my ADP email account to my UBCG account to any other person, nor have I disclosed any of the contents of those emails to any other person.

5.      I have deleted all of the emails I forwarded from ADP to my UBCG email account and have not retained any copies whether in electronic or hard copy form.

6.      Since my resignation from ADP on July 18, 2018 I have not solicited, assisted, or

**EXHIBIT A**

encouraged any ADP employee to leave their employment with ADP, nor have I improperly solicited any of ADP's actual or potential customers in violation of the Agreements. Further, I

{7551079: }

eFiled Lee County Clerk of Courts Page 44

have not published, used, copied, or disclosed to anyone any of ADP's confidential, proprietary, or trade secret information.

7.      The foregoing representations and promises do not alter the Agreements in any way. Going forward, for as long as the Agreements are in effect, I shall abide by each and every provision of the Agreements. If at any time I am uncertain as to whether any conduct violates the Agreements, I will, before proceeding, contact ADP's counsel, Timothy J. Lowe of McDonald Hopkins PLC, to ascertain whether the conduct violates the Agreements.

8.      The foregoing is based upon my personal knowledge. In the event I am called as a witness, I am competent to testify as to the matters contained herein.

David Schwartz

Subscribed and sworn to before me
this _____ day of _____, 2018

Notary Public

**EXHIBIT A**

{7551079: }                                    2

[Award Acceptance Document 2 of 2]



09/01/2017

## RESTRICTIVE COVENANT AGREEMENT

I am currently employed by Automatic Data Processing, Inc., or one of its subsidiaries or affiliated companies (collectively, "ADP") as a Sales Compensated Associate who enjoys substantial compensation and benefits from ADP, including participation in its 2008 Omnibus Award Plan, and as an ADP employee, I have had and will have access to Confidential Information, proprietary information, and trade secrets about the Business of ADP, ADP's operations, systems, techniques, software, and processes, its Clients, Business Partners, Vendors, and other unique trade and business methods, all of which are valuable assets of ADP that are developed at great effort and expense to ADP. I also have had or will have significant contact with ADP's current and prospective Clients, Business Partners, and/or Vendors in order to develop ADP's goodwill and client relations so that I can promote ADP's interests and objectives, and I understand that ADP has invested and will invest a significant amount of time and financial resources to develop my skills to assist me in performing my job duties for ADP. While these current and prospective Clients, Business Partners, and/or Vendors may be secured or serviced by ADP associates, including me, I acknowledge that such individuals or entities remain at all times those of ADP and that the goodwill engendered by the relationships is intended to inure only to the benefit of ADP; the goodwill is owned by ADP; and ADP shall be the sole beneficiary of such goodwill during and after the termination of my employment with ADP.

I understand that ADP is a profit-generating business operating in a highly competitive business environment and that it has a valid interest in protecting its valuable assets, including its Confidential Information, proprietary information and trade secrets, its goodwill and business relationships with its Clients, Business Partners, Vendors, and employees, and the specialized training of its employees, and I recognize that my use of ADP's valuable assets, directly or indirectly, against or in competition with ADP, during and after my employment, will result in irreparable harm to ADP. Accordingly, I understand that this Agreement is meant to limit reasonably and fairly my competition during my employment and following the end of my employment, and to define the corresponding obligations between me and ADP regarding: (1) unfair competition, (2) the solicitation of Clients, Business Partners or Vendors for or on behalf of ADP's competitors, (3) the solicitation of ADP's employees, and (4) the treatment of proprietary information, Confidential Information, and trade secrets.

NOW, THEREFORE, in consideration of my initial or continuing employment with ADP, ADP's disclosure to me of proprietary information, Confidential Information, and trade secrets to allow me to perform my duties for ADP, my participation in ADP's 2008 Omnibus Award Plan, the mutual benefits conferred herein, and for other good and valuable consideration (the receipt and sufficiency of all of which I hereby acknowledge), I agree as follows:

1.    **Definitions.**

a.    **"Business of ADP"**    means the following businesses or services: (i) business outsourcing and human capital management solutions, including, without limitation, human resource, payroll, time, attendance and labor management, pre-employment, talent management, compliance and payment solutions, tax and benefits and retirement adm**EXHIBIT A**ns and employment administration outsourcing solutions, which ADP provides globally; (ii) workers compensation and health insurance, which ADP provides in the United States and Canada through its licensed insurance agencies and consulting services relating to its

business outsourcing and human capital management solutions; and (iii) data-driven business intelligence on

b.    **"Business Partners"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees and agents, that is or has been in a commercial or business relationship with ADP (excluding Clients and Vendors), including, without limitation, (i) referral partners, resellers, brokers, distributors, licensees, franchisees and marketing partners, (ii) implementation, integration and development partners, (iii) co-investors and joint venture

partners, and (iv) any other individual or entity whose products or services ADP purchases, acquires or licenses for use with, or redistribution to, a third party (including Clients).

c.    **"Clients"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees or agents, or government or quasi-government entity, and their employees or agents, for: (i) whom ADP provides products or services in connection with the Business of ADP; (ii) whom ADP has provided products or services in connection with the Business of ADP within the one (1) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; (iii) whom I have solicited, contacted, called upon, communicated with, or attempted to communicate with on behalf of ADP in connection with the Business of ADP within the two (2) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (iv) about whom I have any Confidential Information or trade secret information.

d.    **"Competing Business"** means any individual (including me), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is engaged in any business or enterprise that is the same as, or substantially the same as, that part of the Business of ADP in which I have worked or to which I have been exposed during my employment with ADP (regardless of whether I worked only for a particular segment of that part of the business in which I worked—for example, business segments based on the number of employees a Client has or a particular class of business using an ADP product or service).

e.    **"Confidential Information"** means information and the compilation of information known or possessed by me because of my employment at ADP that is created, compiled, received or gathered by ADP or its agents and is related to the Business of ADP, that is valuable to ADP, and which ADP endeavors to protect from disclosure or use by its competitors and others who could benefit from its use, whether in written, tangible, electronic or any other form or media. Assuming the foregoing criteria are met, Confidential Information includes but is not limited to information about: ADP's operations, products, business plans, market strategies, and services; research and development of ADP products and services; ADP's intellectual property and trade secrets; Creative Works, including all publications, products, applications, processes, and software in any stage of development; names and other listings of current or prospective Clients, Business Partners, and Vendors (including contact information that may be compiled in computer databases that are not owned or controlled by ADP such as address books, personal digital assistants, smart phones, cloud storage services, and social and business websites); proposals made to current or prospective Clients, Business Partners, and Vendors or other information contained in offers or proposals to such Clients, Business Partners, and Vendors; the terms of any arrangements or agreements with Clients, Business Partners, and Vendors, including the amounts paid for such services or how pricing was developed by ADP, the implementation of Client-specific projects, the identity of Business Partners and Vendors, and Business Partner and Vendor pricing information, the composition or description of future services that are or may be provided by ADP; ADP's financial, marketing, and sales information; technical expertise and know-how developed by ADP, including the unique manner in which ADP conducts its business; employee lists, employee capabilities, employee compensation, prospective employee information, and employee training information and practices; Personally Identifiable Information; and Protected Health Information.    Confidential Information also includes any information disclosed to ADP by a third party (including, without limitation, current or prospective Clients, Business Partners, and Vendors) that ADP is obliged to treat as confidential. This definition of Confidential Information excludes information that is or becomes known or generally available in the public domain through lawful means, other than through my act or failure to act. This definition of Confidential Information and the use of the term Confidential Information in this Agreement are not meant to limit ADP's rights under applicable trade secrets laws, and ADP specifically reserves all of its rights under all applicable laws concerning trade secrets.    **EXHIBIT A**

f.    **"Creative Works"** means any and all works of authorship including, for example,

written documents, spreadsheets, graphics, designs, trademarks, service marks, algorithms, computer programs manuals, reports, and compilations of various elements, whether or not patentable or registrable under copyright, trademark, or similar domestic and international laws.

     **g.**     **"Material Business Contact"** means contact that is intended to establish or strengthen a business relationship for ADP.

2

{6883400:}

eFiled Lee County Clerk of Courts Page 47

     **h.**     **"Personally Identifiable Information" ("PII")** is Confidential Information and includes an individual's first name and last name or first initial and last name in combination with any of the following: an individual's social security number, tax identification number, social insurance number, driver's license number, government-issued identification card number, financial or bank account information, healthcare information, or credit, debit or payroll card number.

     **i.**     **"Protected Health Information" ("PHI")** is Confidential Information and includes information that is created, received, and/or maintained by the Company related to an individual's health care (or payment related to health care) that directly or indirectly identifies the individual.

     **j.**     **"Territory"** means the geographic area where I worked, represented ADP, or had Material Business Contact with ADP's Clients in the two (2) year period preceding the termination of my employment with ADP.

     **k.**     **"Vendors"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, or government entity that supplies materials or services to ADP for internal use.

**2.**     **Duties and Best Efforts.** I agree to provide to ADP and its Clients services related to the Business of ADP, as directed by ADP in its sole discretion. During employment, I agree to devote my full time and best efforts to ADP, not to provide to ADP's Clients or ADP's competitors the same or similar services or products as those provided to ADP other than on behalf of ADP, and not to engage in any other employment, consultant, or advisory relationship that is the same as, similar to, or related to my duties with ADP or the Business of ADP or that otherwise creates a conflict of interest with ADP. I also agree that I am prohibited from accessing any of ADP's Confidential Information, computer systems, servers, drives, or databases for any competitive or conflicting purpose and that any authorization for such access is revoked and prohibited by ADP once I engage in any competitive or conflicting activities or take any material steps towards accomplishing any competitive or conflicting activities. I further agree to not make any false or misleading statements regarding ADP or its products or services, and agree to not make any false or misleading statements or take action to mislead ADP regarding clients, prospective clients, business partners, or vendors, including falsifying documents.

**3.**     **Non-Competition.** I agree that during my employment and for a period of twelve (12) months from the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, own, manage, operate, join, control, finance, be employed by or with, or participate in any manner with a Competing Business anywhere in the Territory where doing so will require me to (i) provide the same or substantially similar services to a Competing Business as those which I provided to ADP while employed, or (ii) use, disclose or disseminate ADP's Confidential Information or trade secrets. However, after my voluntary or involuntary termination of my employment for any reason and with or without cause, nothing shall prevent me from owning, as an inactive investor, securities of any competitor of ADP which is listed on a national securities exchange.

**4.**     **Non-Solicitation of and Non-Interference with Clients, Business Partners, and Vendors.**

     **a.**     **Clients:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly, solicit, divert, appropriate, or accept any business from, or attempt to solicit, divert, appropriate, or accept any business from any Client for the purposes of providing products or services within the United States of America that are the same as or substantially similar to those provided in the Business of ADP. I also agree that I will not induce or encourage or attempt to induce or encourage any Client to cease doing business with ADP or materially alter their business relationship with ADP.

**EXHIBIT A**

**b.** **Business Partners:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly engage, contract with, solicit, divert, appropriate or accept any business from, or attempt to engage, contract with, solicit, divert, appropriate or accept any business from any Business Partner for the purpose of providing to me or any Competing Business any product or service within the United States of America that is (a) the same as or substantially similar to the product or service provided to ADP and which ADP uses for, uses for obtaining, or distributes to, its Clients or (b) specialized, customized or designed by the Business Partner for ADP. This

provision applies only to a Business Partner: (i) with whom ADP currently has a commercial or business relationship in connection with the Business of ADP; (ii) with whom ADP has had a commercial or business relationship in connection with the Business of ADP within the one (1) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (iii) about whom I have any Confidential Information or trade secret information. I also agree that I will not induce or encourage or attempt to induce or encourage any Business Partner to cease doing business with ADP or materially alter their business relationship with ADP.

**c.** **Vendors:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not induce or encourage or attempt to induce or encourage any Vendor to cease doing business with ADP within the United States of America or materially alter their business relationship with ADP within the United States of America.

**5.** **Non-Solicitation of Employees.** I agree that during my employment with ADP and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, hire, solicit, recruit, or encourage to leave ADP, any current employees of ADP or hire, solicit, recruit, or contract with employees who terminate their employment with ADP within twelve (12) months following my termination date. This restriction shall only apply to ADP employees located within the United States of America.

**6.** **Non-Disclosure and Non-Use of Confidential Information and Trade Secrets.** During my employment, except as authorized and required to perform my duties for ADP, and after the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or trade secrets or take any action causing, or fail to take any action necessary in order to prevent, any such information to lose its character or cease to qualify as Confidential Information or a trade secret. I agree to inquire with ADP if I have any questions about whether I am authorized or required to access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or whether particular information is Confidential Information or a trade secret before accessing, using or disclosing such information. I understand, however, that nothing in this Restrictive Covenant Agreement prohibits me from reporting possible violations of federal law or regulation to any governmental agency or entity or from communicating with any such agency or entity regarding the same. I also agree to immediately return to ADP all property and information belonging to ADP such as keys, credit cards, telephones, tools, equipment, computers, passwords, access codes, pin numbers, and electronic storage devices, as well as all originals, copies, or other physical embodiments of ADP's Confidential Information or trade secrets (regardless of whether it is in paper, electronic, or other form), including any such information in any programs, business forms, manuals, correspondence, files, databases, or on computer disks or any other storage medium, including but not limited to cloud storage, whether or not owned or controlled by me or ADP (e.g., social and business networking websites, web-based email servers, Notability, or cloud storage services), immediately upon termination of my employment or upon any earlier request by ADP, and I agree not to keep, access, disclose, use, reproduce, distribute, or otherwise disseminate any copies, electronic or otherwise, of any of the foregoing. I also understand that my obligations under this paragraph, as well as the other covenants in this Agreement, extend to my activities on the internet, including my use of business oriented social networking sites such as LinkedIn and Facebook. This shall include deleting any business related connections or contacts, including all ADP Clients and Business Partners, that I inputted in or with whom I connected on any business oriented social networking sites, my LinkedIn account, any cloud storage, any electronic device, or any cell phones while employed at ADP. Pursuant to 18 U.S.C. § 1833(b), and as set forth fully therein, notice is hereby given that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a

EXHIBIT A

document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to court order.

**7.     Prior Agreements and Disclosure of Agreement to Third Parties.** I represent that I am not a party to any agreement with any former employer or any other person or entity containing any non-disclosure, non-compete, non-solicitation, non-recruitment, intellectual property assignment, or other covenants that will affect

4

{6883400:}

eFiled Lee County Clerk of Courts Page 49

my ability to devote my full time and attention to the Business of ADP that has not already been disclosed to ADP in writing. I also agree to provide a copy of this Agreement to any subsequent employer, person, or entity to which I intend to provide services that may conflict with any of my obligations in this Agreement prior to engaging in any such activities and to provide ADP in writing the name and address of any such employer, person, or entity and a description of the services I intend to provide prior to engaging in any such activities. I agree that ADP may also provide a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party at any time as it deems necessary to protect its interests, and I agree to indemnify ADP against any claims and hold ADP harmless from any losses, costs, attorneys' fees, expenses, fees, and damages arising out of my failure to comply with this paragraph or ADP's providing a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party.

**8.     Severability and Reformation.** I agree if any particular paragraph, subparagraph, phrase, word, or other portion of this Agreement is determined by an appropriate court to be invalid or unenforceable as written, it shall be modified as necessary to be made valid or enforceable, and such modification shall not affect the remaining provisions of this Agreement, or if it cannot be modified to be made valid or enforceable, then it shall be severed from this Agreement, and all remaining terms and provisions shall remain enforceable.

**9.     Choice of Law, Venue, and Jurisdiction.** The interpretation, validity, and enforcement of this Agreement will be governed by the laws of the State of New Jersey, without regard to any conflicts of law principles that require the application of the law of another jurisdiction. I agree that any action by me to challenge the enforceability of this Agreement must be brought or litigated exclusively in the appropriate state or federal court located in the State of New Jersey. I also agree that any action by ADP to enforce this Agreement, as well as any related disputes or litigation related to this Agreement, may, but do not have to, be brought in the appropriate state or federal court located in the State of New Jersey. I agree and consent to the personal jurisdiction and venue of the federal or state courts of New Jersey for resolution of any disputes or litigation arising under or in connection with this Agreement or any challenge to this Agreement and waive any objections or defenses to personal jurisdiction or venue in any such proceeding before any such court.

**10.    Survival.** I acknowledge that my employment relationship with ADP is "terminable at will" by either party and that ADP or I can terminate the relationship with or without cause and without following any specific procedures. Nothing contained in this Agreement is intended to or shall be relied upon to alter the "terminable at will" relationship between the parties. However, all non-competition, non-solicitation, non-disclosure and non-use, non-recruiting, intellectual property, and Agreement disclosure obligations under paragraphs three (3) through seven (7) of this Agreement shall survive the voluntary or involuntary termination of my employment for any reason and with or without cause, and no dispute regarding any other provisions of this Agreement or regarding my employment or the termination of my employment shall prevent the operation and enforcement of these obligations.

**11.    Relief, Remedies, and Enforcement.** I acknowledge that ADP is engaged in a highly competitive business, and the covenants and restrictions contained in this Agreement, including the geographic and temporal restrictions, are reasonably designed to protect ADP's legitimate business interests, including ADP goodwill and client relations, Confidential Information and trade secrets, and the specialized skills and knowledge gained by me and ADP's other employees during our employment. I acknowledge and agree that a breach of any provision of this Agreement by me will cause serious and irreparable damage to ADP that will be difficult to quantify and for which a remedy at law for monetary damages alone may not be adequate. Accordingly, I agree that if ADP should bring an action to enforce its rights under this Agreement and ADP establishes that I have breached or threatened to breach any of my obligations under this Agreement, ADP shall be entitled, in addition to all remedies otherwise available in law or in equity, to a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining such breach or threatened breach in any court of competent jurisdiction without the necessity of posting a surety bond, as well as an equitable accounting of all profits or benefits arising out of any violation of this Agreement. I also agree that nothing in this Agreement

**EXHIBIT A**

shall be construed to prohibit ADP from pursuing any and all other legal or equitable remedies available to it for breach of any of the provisions of this Agreement, including the disgorgement of any profits, bonuses, commissions, or fees realized by me, any subsequent employer, any business owned or operated by me or to which I provide services, or any of my agents, heirs, or assigns. I also agree that that the knowledge, skills, and abilities I possess at the time of commencement of my employment are sufficient to permit me to earn a livelihood satisfactory to me without violating any provision of paragraphs three (3) through seven (7) above, for example, by using such knowledge, skills, and abilities, or some of them, in the service of business that is not competitive with ADP. I further agree to pay any and all legal fees, including without limitation, all

5

{6883400:}

attorneys' fees, court costs, and any other related fees and/or costs incurred by ADP in enforcing this Agreement.

**12.** **Tolling.** The restricted time periods in paragraphs three (3) through six (6) above shall be tolled during any time period that I am in violation of such covenants, as determined by a court of competent jurisdiction, so that ADP may realize the full benefit of its bargain. This tolling shall include any time period during which litigation is pending, but during which I have continued to violate such protective covenants and a court has declined to enjoin such conduct or I have failed to comply with any such injunction.

**13.** **Cooperation.** During my employment, I shall cooperate with ADP in any internal investigation or administrative, regulatory or judicial proceeding as reasonably requested by ADP (including, without limitation, being available to ADP upon reasonable notice for interviews and factual investigations, appearing at ADP's request to give testimony without requiring service of a subpoena or other legal process, volunteering to provide ADP all pertinent information and turning over to ADP all relevant documents which are or may come into my possession, all at times and on schedules that are reasonably consistent with my other permitted activities and commitments). In the event ADP requires my cooperation in accordance with this Section, ADP shall reimburse me solely for reasonable travel expenses (including lodging and meals, upon submission of receipts).

**14.** **Entire Agreement and Validity of Terms.** I agree that I do not rely, and have not relied, upon any representation or statement not set forth herein by ADP or any of ADP's agents, representatives, or attorneys, and that this Agreement may be changed only by a subsequent agreement in writing signed by both parties. I understand that I may have an existing agreement(s) with ADP, through acquisition of a prior employer or otherwise, that may include the same or similar covenants as those in this Agreement, and acknowledge that this Agreement is meant to supplement any such agreement(s) such that the covenants in the agreements that provide ADP with the greatest protection enforceable under applicable law shall control, and that the parties do not intend to create any ambiguity or conflict through the execution of this Agreement that would release me from the obligations I have assumed under the protective covenants in any of these agreements.

**15.** **Electronic Signature.** I agree that ADP may enforce this Agreement with a copy for which I have provided an electronic signature.

**16.** **Assignment and Successorship.** This Agreement and ADP's rights and obligations hereunder may be assigned by ADP and shall inure to the benefit of and shall be enforceable by any such assignee, as well as any of ADP's successors in interest. This Agreement and my rights and obligations may not be assigned by me, but are binding upon my heirs, administrators, executors, and personal representatives.

**17.** **Waiver.** ADP's waiver of a breach of any provision of this Agreement in any particular instance shall not be deemed to be a waiver of any other breach in any other instance and/or of ADP's other rights at law, in equity, or under this Agreement. ADP's failure to take action against any other employee for similar breaches shall not operate as a wavier by ADP of a breach as to me. Any waiver by ADP of any breach of this Agreement by me shall not be effective unless in writing signed by the President of ADP, and no such waiver with regards to me or any other person under a similar agreement shall operate or be construed as a waiver of the same type of breach or any other breach on a subsequent occasion by me or any other person or entity.

**18.** **Jury Trial Waiver.** I agree that, to the fullest extent permitted by law, each party waives any right to trial by jury with respect to any proceeding arising out of or relating to this Agreement.

**19.** **Opportunity to Review.** I agree that I have read this Agreement before signing it, understand its terms, and that I have had the opportunity to have legal counsel review this Agreement, prior to signing it, and I acknowledge that I have not been forced or coerced in any manner to sign this Agreement and do so of my

**EXHIBIT A**

After reviewing this document, close this window to continue the grant acceptance process.

6

{6883400:}

eFiled Lee County Clerk of Courts Page 51

HRU6AZL8

10/02/2017 10:59 AM U.S. Eastern Standard Time

ACCEPTED

**EXHIBIT A**

{6883400:}

7

eFiled Lee County Clerk of Courts Page 52

## SALES REPRESENTATIVE'S AGREEMENT

**AGREEMENT** between **Automatic Data Processing, Inc.**, a Delaware corporation, or one of its divisions, subsidiaries or affiliates (collectively, the "**Company**") with offices at One ADP Boulevard, Roseland, New Jersey 07068, and the employee agreeing to the terms hereof ("**Employee**").

In consideration of the covenants and agreements contained herein, the Company and Employee agree as follows:

1. **NATURE OF SERVICES.** The Company hereby employs Employee, and Employee accepts employment with the Company, as a Sales Representative. Employee shall devote Employee's best efforts and entire business time to the performance of Employee's duties and responsibilities hereunder. Employee agrees that Employee has read or will immediately read the Company's Code of Business Conduct and Ethics and the Employee will conduct himself or herself in accordance with that and all other Company policies throughout Employee's employment with the Company. Employee understands that the Company is committed to ethical behavior in business and Employee agrees that Employee will strictly adhere to the highest standards of ethics at all times when representing the Company.

2. **COMPENSATION.** Employee's compensation as a Sales Representative of the Company is as set forth in the Sales Compensation Plan which may be amended at any time at ADP's discretion.

3. **OTHER EMPLOYEE BENEFITS.** Employee shall be eligible to participate in any group health benefits, life insurance, stock purchase, vacation and other employee benefit plans in accordance with the terms and conditions of those plans.

4. **NON-SOLICITATION, NON-DISCLOSURE, NON-USE AND NON-HIRE.**

(a) Employee agrees that during the period commencing the date Employee becomes an employee of the Company and ending one year after the date Employee ceases to be an employee of the Company for any reason whatsoever (the "Non-Solicitation Period"), Employee shall not, on Employee's behalf or on behalf of any other person, corporation, partnership or other entity whatsoever (a "Person"), directly or indirectly, solicit, contact, call upon, communicate with or attempt to communicate with any Person which was a client, bona fide prospective client or marketing partner of the Company before the date Employee ceases to be an Employee of the Company (the "Termination Date") that (i) was located in any territory Employee managed or to which Employee was assigned or covered during the two-year period prior to the Termination Date and/or (ii) Employee was assigned, managed and/or had knowledge of, contact or involvement with during the two-year period prior to the Termination Date, to sell, license or lease any software, product or service competitive or potentially competitive with any software, product or service sold, licensed, leased, provided or under development by the Company during the two-year period prior to the Termination Date, provided that the restrictions set forth in this paragraph shall only apply to clients, bona fide prospective clients or marketing partners of businesses of the Company with which the Employee was involved or exposed.

(b) During and after Employee's employment with the Company, Employee will not disclose to any Person any business methods, procedures, pricing and marketing structure and strategy, programs, forms, confidential information, trade secrets, the names and addresses of current clients, former clients and prospective clients of the Company, or other data and information relating to the Company, its vendors, licensors, marketing partners or clients, learned by Employee at any time during Employee's employment with the Company (the "Information"). Upon termination of Employee's employment with the Company, Employee will return all copies of all materials which belong to the Company (whether or not such materials were prepared by the Company) and which are in Employee's possession or over which Employee exercises any control.

(c) Employee will not, during the Non-Solicitation Period, except in the course of fulfillment of Employee's duties as an employee of the Company, use or act upon in any way, directly or indirectly, any information which became known to Employee during the course of Employee's employment with the Company concerning the identity or business activity of any current clients, former clients, prospective clients and/or marketing partners of the Company.

(d) During the Non-Solicitation Period, Employee will not, directly or indirectly, hire, solicit, or encourage to leave the Company's employ any employee of the Company, or solicit, hire or contract with any former employee of the Company within one year after the date such person ceases to be an employee of the Company.

(e) Employee agrees that a violation of the foregoing covenants not to solicit, not to disclose, not to use and not to hire or any provisions thereof will cause irreparable injury to the Company. Accordingly, the Company shall be entitled, in addition to any other rights and remedies it may have at law or in equity, to an injunction enjoining and restraining Employee from doing or continuing to do any such act.

**EXHIBIT A**

(f) For the purposes of this Agreement, the term "client" and "prospective client" shall include without limitation any entity to or for whom the Company provides or proposes to provide, as applicable, products or services either directly or indirectly, whether as a vendor,

subcontractor to another vendor or otherwise, whether or not privity of contract exists between the Company and such entity.

5. PATENTS AND OTHER DEVELOPMENTS. Employee understands and acknowledges that the Company shall have exclusive rights to anything relating to its actual or prospective business which Employee conceives or works on while employed by the Company. Accordingly, Employee:

(a) will promptly and fully disclose all such items to the Company and will not disclose such items to any other person or entity (other than employees of the Company authorized to review such information) without the Company's prior consent;

(b) will maintain on the Company's behalf and surrender to the Company upon termination of the Employee's employment with the Company appropriate written records regarding all such items;

(c) will, but without personal expense, fully cooperate with the Company, execute all papers and perform all acts requested by the

eFiled Lee County Clerk of Courts Page 53

Company to establish, confirm or protect its exclusive rights in such items or to enable it to transfer title to such items, together with any patents, copyrights, trademarks, service marks and/or trade names that may be applied for and/or issued;

(d) will, but without personal expense, provide such information and true testimony as the Company may request regarding such items, including, without limitation, items which Employee neither conceived not worked on but regarding which employee has knowledge because of Employee's employment by the Company;

(e) hereby assigns to the Company, its successors and assigns, exclusive right, title and interest in and to all such items including, without limitation, any patents, copyrights, trademarks, service marks and/or trade names which have been, or may be, issued; and

(f) states that the only such items in which Employee personally holds or claims an interest, and which are not subject to this Agreement, are listed on the Ownership Schedule attached hereto. The absence of such an Ownership Schedule, or the absence of any disclosure on such Ownership Schedule, means that no such items exist.

6. **AMENDMENTS; TERMINATION.**

(a) The Company reserves the right to amend or modify this Agreement or the Sales Compensation Plan at any time after the date hereof.

(b) Notwithstanding the foregoing, Employee understands and agrees that Employee is employed by the Company on an at-will basis. As an at-will employee, Employee understands that either the Company or Employee can terminate the employment relationship at any time for any reason, with or without advance notice and with or without cause. Employee further understands that, although over the course of Employee's employment, other terms and conditions of Employee's employment may change, the at-will term of Employee's employment will not change. Employee understands that no one other than the Chief Executive Officer of the Company may enter into any agreement with Employee contrary to the foregoing and that any such contrary agreement must be in writing and signed by the Chief Executive Officer.

7. **GOVERNING LAW.** This Agreement shall be construed and interpreted in accordance with the laws of the State of New Jersey (where the Company's principal executive offices are located) applicable to contracts made and to be performed entirely within such State. The courts of New Jersey and the United States District Court for New Jersey shall have jurisdiction over the parties with respect to any dispute or controversy between them arising under or in connection with this Agreement. A summons or complaint in any such action or proceeding may be served by mail in accordance with Paragraph 8 below.

8. **NOTICES.** All notices shall be sent to the parties by certified or registered mail at the addresses set forth above or to any changed address which may be given in writing hereafter. All notices to the Company shall include a copy to the Company at One ADP Boulevard, Roseland, New Jersey 07068, Attention: General Counsel.

9. **SEPARABILITY.** If any provision of this Agreement (including, but not limited to, any provision set forth in Paragraphs 4 and 5 above), or any portion thereof, is held to be invalid or unenforceable, the balance of the Agreement shall remain in effect, and if any provision is inapplicable to any person or circumstance it shall nevertheless remain applicable to all other persons and circumstances.

10. **TRANSFER OF EMPLOYMENT.** The parties recognize that Employee may be employed in offices of the Company other than the one in which Employee is currently employed hereunder. Accordingly, the parties agree that whenever any event occurs affecting their respective rights, duties, or obligations hereunder, the member of the Company by which Employee is employed at the time such event occurs shall be deemed to be the "Company" for all purposes of this Agreement.

11. **HEADINGS.** The headings in this Agreement are solely for convenience of reference and shall not affect this Agreement's interpretation.

12. **ACKNOWLEDGMENTS.** Employee acknowledges that the Information is confidential and proprietary information belonging to the Company and that the use or disclosure of the Information except in connection with the Employee's employment with the Company could reduce that the Company's competitive advantage or otherwise commercially damage the Company. Employee further acknowledges that the terms of this Agreement are reasonable and that Employee has had a reasonable opportunity to consult with an attorney before signing this Agreement.

**IN WITNESS WHEREOF,** the parties hereto have entered into this Agreement as of the date agreed to (whether electronically or otherwise) by Employee.

**EXHIBIT A**

AUTOMATIC DATA PROCESSING, INC.

Michael Pratt
Vice President, General Counsel and Secretary

Name (Electronic Signature):    David Schwartz
Accept/Decline:    Accept
Date:    Apr 30, 2015 11:17 am

eFiled Lee County Clerk of Courts Page 54

**Automatic Data Processing, Inc.**
One ADP Boulevard
Roseland, New Jersey 07068

For good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, I agree with you that:

1. (a) During and at any time after my employment with Automatic Data Processing, Inc. and/or any of its divisions, subsidiaries and affiliates (collectively "ADP"), I shall not, except in connection with my duties as an ADP employee, on my behalf or on behalf of any other person, corporation, partnership or other entity whatsoever (each, a "Person"), access, use, or disclose to any Person any confidential information, trade secrets, or other proprietary information of ADP, its vendors, licensors, marketing partners, business partners, or clients (including, but not limited to, (i) ADP's business methods, procedures, pricing and marketing structure and strategy which are not publicly available and which I did not learn from a public source, (ii) ADP's source and object codes, computer screens, programs and forms, experimental or research work, methods, processes, formulas, or drawings, (iii) the names, addresses and business activities of ADP's current, former and prospective clients, and (iv) the names, addresses, and personal information of ADP's and ADP's current, former, and prospective clients' employees), learned by me at any time during my employment with ADP (collectively, the "ADP Information").

(b) Upon ceasing to be an ADP employee, I shall immediately return all documents and electronically stored information containing ADP Information (including all copies thereof), whether or not such materials were prepared by ADP, me or another Person, and which are in my possession or over which I exercise any control.

2. I understand and acknowledge that ADP shall have exclusive rights to anything related to ADP's actual or prospective business which I conceive or work on, either in whole or in part, while employed by ADP and that all such work product is hereby assigned to ADP and, if copyrightable, shall be property of ADP as "works for hire" under federal copyright law. I further understand and acknowledge that such work product may also constitute ADP confidential and proprietary information. Accordingly, I:

(a) shall promptly and fully disclose all such items to ADP and will not disclose such items to any other person or entity (other than employees of ADP authorized to review such information), without ADP's prior consent;

(b) shall maintain on ADP's behalf and surrender to ADP upon ceasing to be an ADP employee all written records regarding all such items;

(c) shall, but without personal expense, fully cooperate with ADP and execute all papers and perform all acts requested by ADP to establish, confirm or protect its exclusive rights in such items or to enable it to transfer legal title to such items, together with any patents, copyrights, trademarks, service marks and/or trade names that may be applied for and/or issued;

(d) shall, but without personal expense, provide such information and true testimony as ADP may request regarding such items including, without limitation, items which I neither conceived nor worked on but regarding which I have knowledge because of my employment by ADP;

(e) hereby assign to ADP, its successors and assigns, exclusive right, title and interest in and to all such items including, without limitation, any patents, copyrights, trademarks, service marks and/or trade names which have been, or may be, issued; and

(f) state that only such items in which I personally hold or claim an interest and which are not subject to this Agreement are listed on the Ownership Schedule attached hereto. The absence of an Ownership Schedule, or the absence of any disclosure on such Ownership Schedule, means that no such items exist.

3. (a) During the period that I am an ADP employee, I shall not (except in connection with my duties as an ADP employee), on my behalf or on behalf of any other Person, directly or indirectly, solicit, contact, call upon, communicate with or attempt to communicate with any Person that is a client, bona fide prospective client, marketing partner or business partner of ADP to sell, market, license, lease or provide any software, product or service competitive or potentially competitive with any software, product or service sold, marketed, licensed, leased, provided or under development by ADP at any time during my employment.

(b) During the period commencing on the date I cease to be an ADP employee for any reason whatsoever (such date, being the "Termination Date") and ending on the date that is twelve months thereafter, I shall not, on my behalf or on behalf of any other Person, directly or indirectly, solicit, contact, call upon, communicate with or attempt to communicate with any Person that was a client, bona fide prospective client, marketing partner or business partner of ADP before the Termination Date to sell, market, license, lease or provide any software, product or service competitive or potentially competitive with any software, product or service sold, marketed, licensed, leased, provided or under development by ADP during the two-year period prior to my Termination Date, provided that the restrictions set forth in this paragraph 3(b) shall only apply to clients, bona fide prospective clients, marketing partners or business

**EXHIBIT A**

partners of businesses of ADP with which I am involved.

of purposes of this agreement, the term "client" shall mean the client list and layout without limitation as to persons or location.

ADP provides or proposes to provide, as applicable, products or services, either directly or indirectly, whether as a vendor, subcontractor to another vendor or otherwise, and whether or not privity of contract exists between ADP and such Person.

4. During the period commencing on the date I become an ADP employee and ending on the date that is twelve months following my Termination Date, I will not, directly or indirectly, hire, contract with, solicit, or encourage to leave ADP's employ any ADP employee, or hire or contract with any former ADP employee within one year after the date such person ceases to be an ADP employee.

eFiled Lee County Clerk of Courts Page 55

5. During my employment by ADP, I shall not accept any position (unless such position is to commence after my employment by ADP ceases), gratuities, compensation, reimbursement or funds, or their equivalent, from any Person engaged in any business in which ADP is engaged.

6. I acknowledge and agree that a violation of the foregoing covenants not to disclose, not to solicit and not to hire will cause irreparable injury to ADP. ADP shall be entitled, in addition to any other rights and remedies it may have at law or in equity, to an injunction enjoining and restraining me from performing, and continuing in the performance of, any such violation.

7. I understand and agree that I am employed on an at-will basis. As an at-will employee, I understand and agree that either ADP or I can terminate our employment relationship at any time for any reason, with or without advance notice and with or without cause. I understand and agree that, although over the course of my employment, other terms and conditions of my employment may change, the at-will term of my employment will not change. I understand that no one other than the Chief Executive Officer of ADP may enter into any agreement with me contrary to the foregoing and that any such contrary agreement must be in writing and signed by the Chief Executive Officer.

8. My obligations under this agreement shall be binding upon me regardless of which office(s) of ADP I am employed at or position(s) I hold and shall inure to the benefit of any successors or assigns of ADP. This agreement supplements and does not supersede any prior agreements(s) on the subject matter addressed herein.

9. If any provision of this agreement is invalid or unenforceable, the balance of this agreement shall remain in effect, and if any provision is inapplicable to any Person or circumstance it shall nevertheless remain applicable to all other Persons and circumstances. This agreement shall be governed by, and construed in accordance with, the laws of the State of New Jersey applicable to contacts made and to be performed entirely within such State. I acknowledge that the terms of this agreement are reasonable and that I have had a reasonable opportunity to consult with an attorney before agreeing to the terms of this agreement.

10. All notices shall be sent to the parties by certified or registered mail at the addresses set forth herein, Attention, in the case of ADP, Vice President, Human Resources, or to any changed address which may be given in writing hereafter. All notices to ADP shall also include a copy to ADP at One ADP Boulevard, Roseland, New Jersey 07068, Attention: General Counsel.

AUTOMATIC DATA PROCESSING, INC.

Michael A. Bonarti,
Vice President, General Counsel and Secretary

Name (Electronic Signature): David Schwartz
Accept/Decline: Accept
Date: Apr 30, 2015 11:16 am

**EXHIBIT A**

**EXHIBIT A**